# COURTS OF APPEALS

BERKSHIRE LUMBER CO., Respondent, v. J. S. CHICK INVESTMENT COMPANY, a Corporation, AND F. S. COLVIN, Appellants.

**Kansas City Court of Appeals, April 7, 1913.**

1. **MECHANIC'S LIEN: Variance Between Statements in Lien-claim and Those in Petition.** The fact that the lien-claim states the contract was made with Quimby as the contractor and that Balfour is the owner does not render a petition fatally variant therefrom which says that Quimby made the contract and that the record title is in Balfour, but that Quimby is the equitable owner. Nor would the petition vary if it alleged that the goods were sold to Quimby and Balfour jointly.

2. ————: **Pleading: Allegation of Joint Contract.** The allegation in the petition that the contract was made with Quimby declares on a contract with Quimby alone since it nowhere states that Balfour was personally bound thereby, but only that her interest in the land became affected by the lien.

Lumber Co. v. Investment Co.

3. ———: ———: **Motion. to Elect.** If there are two causes of. action stated in one count of the petition, a motion to elect is properly overruled where it is made after answer has been filed and the trial begun.

4. ———: ———: ———. Even if a contract with Quimby and also with Quimby and Balfour had been declared on in the petition, in separate counts, still, under the peculiar circumstances of the case, plaintiff ought not to be required to elect since the question of whether one or both of the said parties were personally liable would depend upon the evidence.

5. ———: **Pleading: Ten Days' Notice.** Where the petition affirmatively states that ten days' notice was given and that thereafter the lien-claim was filed, it will not be held bad because the notice was given on January 27, and the petition inadvertently says the lien-claim was filed "on or about Feb. 5," where the evidence shows the lien-claim was in fact filed February 7.

6. ———: ———: **Interest of Other Parties.** It is not incumbent upon a lienor to state with particularity the claim that others may have in the property, or to prove where their interests arose nor how. The statute requires them to be made parties, and places on them the duty to set up their rights if they are superior to plaintiff's.

7. ———: **Lien Statement.** The law does not require a lienor in filing a lien-claim to state therein the precise nature, character or extent of the liability created by the contract or the capacity in which the purchaser of the materials contracted. It is sufficient if it contains the elements required by the statute.

8. ———: ———. The fact that the account is attached to the lien-claim and is therein referred to as exhibit "A" does not defeat the lien. The lien-claim is not a pleading but a notice.

9. ———: **Evidence: Date of Account.** Where the first item furnished is within the time it is not necessary to show when the last accrued.

10. **JUDGMENT: Allowance of Interest.** If there is anything in the petition calling even indirectly for interest on the account, the judgment will not be disturbed because it allows six per cent on the amount found due from the date of the filing of the petition.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*Sebree, Conrad & Wendorff* for appellants.

(1) The variance between the mechanic's lien and the petition and the judgment is fatal to recovery by respondent. 13 Ency. of Plead. & Prac., p. 1004; Dugan v. Higgs, 43 Mo. App. 166; Henry v. Mahone, 23 Mo. App. 83; Guass v. Hussman, 22 Mo. App. 115; Poppert v. Wright, 52 Mo. App. 576; Palmer v. Lavigne, 104 Cal. 30; Frazer v. Barlow, 63 Cal. 71; McAdow v. Miltenberger, 75 Mo. App. 346; Davis v. Bond, 75 Mo. App. 35; Cousins v. Bowling, 100 Mo. App. l. c. 458; Shinn v. Rld, 146 Mo. App. 725; Ramsey v. Henderson, 91 Mo. 565. (2) If the theory upon which the mechanic's lien was filed and the judgment as amended rendered, is to be relied upon, then the petition is fatally defective in not alleging ten days' notice of intention to file mechanic's lien. Heltzell v. Haynes, 35 Mo. 482; Gault v. Soldani, 34 Mo. 150; Baker v. Smallwood, 161 Mo. App. 257. (3) The court was not authorized in sustaining a lien against the interest of appellants in the property, for the reason that no interest was shown by respondent. Keller & Co. v. Assn., 71 Mo. App. 465. (4) The motion of appellants to require respondent to elect should have been sustained. Sessions v. Block, 40 Mo. App. 569; Rider v. Kirk, 82 Mo. App. 120; Thompson v. Irwin, 76 Mo. App. 418; Southworth Co. v. Lamb, 82 Mo. 242; Behen v. Transit Co., 186 Mo. 438. (5) The motion in arrest should have been sustained for, (a) the petition sued to enforce a joint liability which was severed in the judgment. McAdow v. Miltenberger, 75 Mo. App. 346; Davis v. Bond, 75 Mo. 35; Cousins v. Bowling, 100 Mo. App. 458; Shinn v. Railroad, 146 Mo. App. 725; Ramsey v. Henderson, 91 Mo. 565. (b) The judgment was for a greater amount than was asked for in the petition. Shockley v. Fischer, 21 Mo. App. 557; Ashby v. Shaw, 82 Mo. 81; Farrell v. Ins. Co., 66 Mo. 153. (6) The mechanic's lien should have

been excluded from the evidence for the further reasons: (a) It contained no itemized account of the material furnished by claimant. Emmert v. Meyer, 65 Mo. App. 612; Bowling v. McFarland, 38 Mo. 465; Pomeroy v. Fullerton, 113 Mo. 453; Merrill v. Trust Co., 46 Mo. 242; Brick Works v. Flanigan Bros., 87 Mo. App. 347. (b) There was no evidence as a basis for the lien when it was introduced in evidence. (7) Defendant Quimby was not a contractor for defendant Balfour. (8) There was no evidence that the material sued for was furnished or used on the property within the lien period. Darling v. Eldridge, 88 Mo. App. 525; Baker v. Smallwood, 161 Mo. App. 257.

*Ellis, Cook & Barnett* for respondent.

(1) There was no fatal variance between the mechanic's lien and the petition. Lumber Co. v. Churchill, 114 Mo. App. 578; Sash & Door Co. v. Shade, 137 Mo. App. 20; Madden v. Realty Co., 75 Mo. App. 358, 363; Macklin v. Railroad, 52 Mo. App. 516; Van Riper & Rodgers v. Morton, 61 Mo. App. 440; Lumber Co. v. Greffet, 154 Mo. App. 33; Winslow v. McCully. 169 Mo. 236; Putnam & Stevens v. Rose, 55 Mo. 116. (2) The petition does allege ten days' notice of intention to file machanic's lien, and even if it did not the proof on that point is conclusive, and this court would not set aside the judgment on that ground, since it was not prejudicial error. Sec. 2082, R. S. 1909; McDermott v. Claas, 104 Mo. 14; Freeland v. Williamson, 220 Mo. 217; Stumpe v. Kopp, 201 Mo. 412; Mann v. Doerr, 222 Mo. 15. (3) The court committed no error in sustaining a lien against the interests of appellants in the property, though respondant's petition did not set out the same. (a) Appellants by their general denial in effect disclaimed any interest in the property. Murphy v. De France, 23 Mo. App. 337; Musser v. Adler, 86 Mo. 445; Hudson

v. Railroad, 101 Mo. 13; Mize v. Glenn, 38 Mo. App. 98; Guinotte v. Ridge, 46 Mo. App. 254; Northup v. Ins. Co., 47 Mo. 435; Brubaker v. Electric Light Co., 130 Mo. App. 439; Levels v. Railroad, 196 Mo. 606; Huber Mfg. Co v. Hunter, 87 Mo. App. 50; Bolton v. Railroad, 172 Mo. 96; Mussman v. Jeller, 108 Mo. App. 348. (b) Respondent was under no obligation to set out the interest of appellants. Russell v. Grant, 122 Mo. 161; Nold v. Ozenberger, 152 Mo. App. 439; Brass Mfg. Co. v. Boyce, 74 Mo. App. 343; Hicks v. Scofield, 121 Mo. 381; Engineering Co. v. Baker, 134 Mo. App. 95; McLaren v. Real Estate Co., 126 Mo. App. 254; Badger Lumber Co. v. Valentine, 54 Mo. App. 172; Boisot on Mechanics' Liens, sec. 559, also 532. (4) The Mechanic's Lien Law is a remedial measure entitled to liberal construction. Brick Works v. Flanagan Bros., 87 Mo. App. 340; Madden v. Realty Co., 75 Mo. App. 358; Steinman v. Stripple, 29 Mo. App. 478; Darlington v. Eldridge, 88 Mo. App. 525; Sash &. Door Co. v. Shade, 137 Mo. App. 20; Independence S. D. & Lbr. Co. v. Bradfield, 153 Mo. App. 527; Hicks v. Scofield, 121 Mo. 381.

TRIMBLE, J.—Suit by respondent to enforce a mechanic's lien.

Between October 18, and November 12, 1909, respondent sold to the defendant, E. H. Quimby, $689.62 worth of lumber which went into the construction of a residence on the lot against which the lien is sought to be enforced. During this time and afterwards the record title to said lot stood in the name of a Miss F. E. Balfour. It was discovered later (though the evidence does not show just when, but after the filing of the lien-claim), that Quimby was the equitable owner of the property, and that the title was placed in Balfour to secure her for that part of the money advanced by her to assist in paying for same.

The account not being paid, respondent, on January 27, 1909, served written notice on both Balfour and Quimby that it claimed a lien for the above amount for the lumber and materials furnished by respondent and used in the house on the lot between the above named dates, and that a lien would be filed at the expiration of ten days unless said account was paid.

On February 7, 1910, within four months from the *first* date of the account, and more than ten days after service of notice, respondent filed a lien-claim in the clerk's office in which it was stated that F. E. Balfour was the owner, that the contract for the sale and delivery of the lumber was made with Quimby and that he was authorized by Balfour to erect the improvement in question. It is unnecessary to say anything about the other parts of said lien-claim at this time, since they were in the usual and regular form except in one particular which will be noticed later on.

The petition to enforce the lien was filed March 24, 1910. It was therein alleged that F. E. Balfour was from the 15th day of April, 1909, and still is, the holder of the legal and record title to said lot but that plaintiff is informed and believes, and so states the fact to be, that Quimby has at all times been the equitable and real owner; that the contract for the sale of the lumber was made with Quimby who was at the time duly authorized and empowered to act both in his own right, in so far as he was the actual owner of said property, and also to act for Balfour; and that thereafter between the above named dates respondent sold and delivered under said contract and at the instance of said defendants, Quimby and Balfour, the lumber sued for and used in the buildings, etc., etc.

A jury was waived and a trial had. The court, in its judgment, found that the contract for the lumber was made with Quimby, that Balfour was and still is the holder of the legal and record title to said lot, that the same was purchased with funds paid in part

by Quimby and in part by Balfour, and that Quimby has at all times been the owner of an equitable interest in said property along with Balfour and that Quimby is, and at the time in controversy was, authorized to act not only in his own right but also in behalf of Balfour in the erection of the improvement, and then rendered a personal judgment against Quimby and Balfour for the amount sued for, to-wit, $689.62 with six per cent interest thereon from March 24, 1910, the date of filing suit, aggregating $729.27, and then enforced this judgment as a lien on the property superior to the interests of all the defendants. But this judgment was afterwards modified by the court so as to make it a personal judgment against Quimby only, but leaving it in all other respects the same as before.

Neither Quimby nor Balfour took an appeal, but the J. S. Chick Investment Company, a corporation, and F. E. Colvin did. They were made parties to the suit by an allegation in the petition that they claimed some interest in the property but that any interest they might claim or set up to the property, and particularly to the dwelling house, was inferior to plaintiff's lien.

The first point insisted on by appellants is that there is a fatal variance between the lien-claim and the petition for the enforcement of the lien. This is on the theory that the lien-claim stated a contract made with Quimby alone, while the petition is based on a contract made jointly with Qnimby and Balfour. In this we think appellants misconceive the legal effect of the petition when considered as a whole. It alleges that the contract was made with Quimby, that the legal title to the lot stood in Balfour but that Quimby was the *real* owner. Now in order to make Balfour jointly liable with Quimby to a personal judgment for the lumber bought, the petition must allege clearly, and the evidence must show, that in reality both contracted for the materials. That is, not only that Quimby con-

tracted for them for himself and Balfour, but that Balfour authorized Quimby in such way as to bind herself personally for the lumber. The petition in reality does not do this. It does make some allegations which doubtless are the cause of appellants' misconception. But these allegations are not for the purpose of stating a joint contract for the purchase of the materials and therefore a joint personal liability therefor, *but for the purpose of stating an agency relation with Balfour sufficient to bind Balfour's interest in the land with a lien.*

The allegation which seems to lend color to the view that the petition states a joint contract is that wherein it is alleged that the materials were sold and delivered at the instance of Quimby *and* Balfour. But just prior to this, the petition alleges that the contract was made with Quimby, and the allegation just referred to as seeming to state a joint contract says the materials were furnished, *under* said contract (i. e., the contract with Quimby), and at the instance of Quimby and Balfour for use in and upon said property. So that this allegation is more consistent with the idea that Balfour's part in it is stated in order to bind Balfour's interest with a lien rather than to establish a joint personal liability in Quimby and Balfour. In order for the petition to be held to state a joint contract and liability, it should be clearly alleged that the contract was made with Quimby and Balfour. When it says the contract was made with Quimby only, then, in order to make a statement of a joint contract and liability, it ought also to contain a statement that Quimby, in making the contract, not only bound himself but that he had authority to and did personally bind Miss Balfour to purchase and pay for the lumber. It did not do this and therefore we do not think the petition was based upon or alleged a joint contract with Quimby and Balfour.

But, if it could be said to be uncertain whether the petition attempted to charge a contract with Quimby alone or a joint contract with Quimby and Balfour, there was no demurrer filed to it nor motion to make more definite and certain, nor was it attacked in any way until after answer was filed and the trial begun. And then the only attack made was an oral request that the plaintiff be required to elect whether they would proceed against Quimby personally or against Quimby and Balfour jointly. This request or motion to elect, if it can be so termed, was denied by the court. From the remarks made by the court in so doing, we think it did so because the court was of the opinon that the petition counted on the contract made with Quimby alone. However, the motion could have been properly denied on the ground that it came too late, since a motion to elect must be filed before the trial begins, where the defect appears on the face of the petition and consists in the joinder of two causes of action in one count. [Pattison's Missouri Code Pleading, sec. 789; Wilson v. St. Louis Railway Company, 67 Mo. App. 443; Paddock v. Somes, 102 Mo. l. c. 235; Hanson v. Neal, 215 Mo. 256, l. c. 270.]

However, under the peculiar circumstances of this case, the motion to elect might well have been denied without regard to when it was made, if the two contracts are properly pleaded. Because the allegations in the petition were not inconsistent, and, even if it was uncertain whether the petition attempted to charge a contract against Quimby alone or a contract with Quimby and Balfour jointly, all evidence admissible on either theory would be admissible on the other. But it would seem that the only persons who could with justice complain of the petition's uncertainty in this regard would be Quimby or Balfour. The contract made by Quimby and binding only him personally, would, if he were Balfour's agent, create the lien. What harm would result to the other defend-

ants if the plaintiff should, on the contract stated, secure a personal judgment against both Quimby and Balfour? Would it not be the duty of plaintiff to prosecute its suit so as to secure as valuable a personal judgment as possible in order to realize the amount thereon from the debtors' personal liabilities and leave the land free to the other defendant's interest therein? And under the circumstances in which plaintiff was placed ought it to be made to elect as to whether it would proceed personally against Quimby alone or Quimby and Balfour jointly? Plaintiff is in this situation: It makes a contract with Quimby to sell lumber for a house to be erected on a lot owned, so far as plaintiff or any one else knows, by Balfour, and the record title so states. Plaintiff thereupon ascertains that Balfour is willing for the improvement to be made and that Quimby is to look after it and attend to the building, i. e., that Quimby is the owner's agent wthin the meaning of the Mechanic's Lien Law so as to hold her land for the lien. After the lien-claim is filed, plaintiff discovers that Quimby is the equitable owner of at least an interest in the land and perhaps the equitable owner of all of it, although the legal title stands in Balfour; that both have furnished money with which the lot was bought and both have some kind of an interest in it. Plaintiff is thus confronted with this problem: It may be that Quimby owns the entire equitable interest and that Balfour has lent him money to buy the lot and has taken the title to the lot in her name merely as security for money advanced; or it may be that both are owners of the property. Whether both are jointly liable for the lumber will depend on whether the evidence shows both contracted for it, Quimby by making the contract, and Balfour by expressly authorizing Quimby to make it for her and agreeing to be personally liable therefor. Plaintiff's right to hold person-

ally liable either Quimby alone or both Quimby and Balfour will depend on what the evidence shows.

In such case, ought the plaintiff to be compelled to elect? It ought not unless the petition in stating a joint contract with Quimby and Balfour would be so variant from the lien-claim as to render fatal the lien proceeding.

But even if the petition has clearly declared on a joint contract it might well be questioned whether it varies fateally from the contract stated in the lien-claim. The latter says the contract was made with Quimby and that he was authorized and empowered by Balfour to erect the building. This may mean that she rendered herself liable for the materials or that she merely rendered her land liable to the lien. The lien statement would be sufficient to cover both. The statute does not require the lien statement to set forth the extent and character of the liability created by the contract. It merely requires that there be filed, within the time required, a just and true account, a true description of the proprty with the name of the owner or contractor, or both, if known to the person filing the lien. [Sec. 8217, R. S. 1909.] If then the petition counted on a joint contract it would not fatally vary from the contract in the lien-claim, or declare on a new contract, but would merely specify that the extent of Quimby's authority was to create a personal liability not only against himself but also a similar liability against Miss Balfour.

These observations may appear to be in the nature of *dicta,* but they are here made because they answer, to some extent, the objection that the personal judgment finally rendered against Quimby alone is inconsistent with the findings in the judgment to the effect that the purchase price of the lot was paid in part by Quimby and in part by Balfour, and that Quimby has at all times been the owner of an equitable interest in said property along with Balfour, and that Quimby is,

and at all times in controversy was, authorized to act not only in his own right but also in behalf of Balfour in the erection of the house. But, as shown herein above, this is not a finding that Balfour is personally liable for the lumber jointly with Quimby.

But whether the foregoing be true or not, the petition did not state a joint contract with personal liability on the part of Quimby and Balfour since it states the contract was made with Quimby and does not contain an additional statement that in making such contract he also personally bound Balfour. In Coen v. Battman, 150 S. W. 1137, the court, on page 1138, says that the allegations in the petition that the materials were furnished at the instance and request of two parties does not necessarily amount to an allegation of a joint contract.

On the contrary the petition, when taken as a whole, proceeds upon the same contract stated in the lien-claim, the contract with Quimby. And the evidence shows that only Quimby made the contract and bought the lumber; that it was charged to him and no one else; that he was the real equitable owner of the property; that while Miss Balfour had furnished some of the money to buy the lot and it stood in her name, yet this was more as a security than anything else; but even if they both could be considered owners of the property, still she was not personally liable for the lumber since she did not authorize Quimby to buy it and bind her personally for it. She merely authorized him to bind whatever interest she had in the property with a lien. And she never did tell plaintiff that she would see that the account for the lumber was paid. Hence the court did right in modifying the judgment so as to make it a personal judgment against Quimby only and a lien on Balfour's interest.

The case is not like those cited by appellant. Of course, as stated in 13 Ency. of Pl. & Pr. 1004, the contract declared on in the petition must be same in

all *essentials* as the one stated in the lien-claim. Cases outside of the State cannot be relied on with certainty on either side of the proposition here considered, since the decisions in each State are controlled by the peculiar statutes of that State. In many of the cases cited, as instances of fatal variation, the lien-claim sets forth one contract and the petition declared on a totally different one. As for example in Malone v. Big Flat Co., 76 Cal. 578, the contract in the one was that the goods were sold on a *quantum meruit* and in the contract declared on in the petition the price was stated as fixed and agreed upon. In Dugan v. Hicks, 43 Mo. App. 166, a part of the materials were furnished to one person alone, which constituted on contract, and a part to another person alone which constituted another contract. The two contracts, of course, could not be joined in one lien. In Henry v. Mahone, 23 Mo. App. 83, there were two distinct contracts under which the materials were furnished. The court held that a lien should have been filed for each. In McAdow v. Miltenberger, 75 Mo. App. 346, the petition declared on a joint contract and the court held that a recovery could not be had on divisible contracts against each debtor singly. In that case materials furnished to one defendant alone were mingled with materials furnished to two defendants jointly and the court held they could not be thus lumped together in one lien proceedings. And so with all the other authorities cited. They do not defeat this lien because they are not applicable to the facts herein. In this case there was but one contract, that with Quimby, and the only difference between the contract in the lien-claim and the one which may appear to be set up by the allegations of the petition is *in the extent of the liability created by that contract.* As stated above, section 8217 never intended to hold the lien claimant to a hard and particular description of the ownership, or of the particular nature of authority vested in the

person with whom the lien claimant dealt. The same principle is contained in Madden v. Paroneri Realty Co., 75 Mo. App. l. c. 363; Macklin v. Railroad, 52 Mo. App. 516.

The fact that the lien-cliam stated Quimby was the contractor while the petition says he is the real owner is not fatal for the same reason. He could be a contractor and also an owner, or one of the owners, or merely agent for the owner. [Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578, l. c. 586; Sash & etc., Co. v. Shade, 137 Mo. App. 20, l. c. 23.] It would be a very illiberal construction of the lien statutes if we were to require the lien-claim to state with minute particularity the character, extent and precise nature of the liability created by the contract or the capacity in which the purchaser of the materials contracted. These statutes should receive a liberal construction. [DeWitt v. Smith, 63 Mo. 263; Hicks v. Scofield, 121 Mo. 381; Lumber Co. v. Clark, 172 Mo. l. c. 598.]

The case ought not to be reversed on the ground that the petition does not allege ten days' notice of intention to file the lien. It does allege this. It says that the notice was served on January 27, 1910, and that thereafter and on the expiration of ten days from that date it filed its lien. True the petition says that the lien was filed "on or about February 5, 1910" (which would be only nine days from January 27), but the petition had already said it was filed after ten days and the evidence showed the lien was filed February 7, 1910. No objection to this feature was made below and were we to reverse the judgment for the clerical error noted we would violate section 2082, R. S. Mo. 1909.

Appellants next insist that as respondent failed to allege and prove the particular interests of the appealing defendants, or to prove that they had any interest, the court could not render judgment making

the lien superior to their interests.   In support of
this, Keller v. B. & L. Assn., 71 Mo. App. 465 is cited.
The syllabus and certain remarks of the learned judge
used in disposing of the case seem to uphold this view.
But in that case the trial court instructed the jury to
find for the defendant, and there was nothing in the
record before the appellate court to show that this
action on the part of the trial court was erroneous and
accordingly the case was affirmed.   The evidence did
not even show what the improvements were, something
very necessary to be shown before a lien of any kind
could be established either against the owner or other
parties having interest in the property.   If the re-
marks of the judge above referred to are not *dicta,*
they are in our opinion too broad.   If, by them, the
learned judge meant to lay down the rule that the
lienor, in order to establish the priority of his lien over
the interests or claim of other defendants, must, in
addition to making such other defendants parties to
the suit, allege and prove the particular interest they
have, when it arose and its relation to the parties to
the contract and the improvement, then we are not
disposed to follow it, since it is opposed to the great
weight of authority.   [Boisot on Mech. Liens, secs.
532, 559; 27 Cyc. 374; 2 Pomeroy on Equity, secs. 741,
743; 9 Ency. Pl. & Pr. 386; Bates v. Miller, 40 Mo. 409,
l. c. 412.]   Such a rule would lay a grevious burden on
lienors, and one that is not required by our statute.
[Sec. 8221.]   If the appealing defendants interest or
lien in the property was superior to the lien of plain-
tiff it was their duty to set up that fact.   In order that
they may do this, and also contest the validity of
plaintiff's lien are the reasons the statute requires
them to be made parties.   In this case it may be as-
sumed that inasmuch as defendants contented them-
selves with simply contesting the validity of plaintiff's
lien, that lien, if established, is superior to any inter-
est they have.   The petition alleged that the appealing

defendants claimed some interest in the property and appealing defendants met this with a general denial. That is, they denied or disclaimed having any interest in the property. If they have no interest how can they be harmed by a judgment of the court saying the lien is superior to their interest?

The lien statement was not defective and, therefore, was properly admitted in evidence. The fact that the account was attached to the lien statement and was therein referred to and made a part of the statement as exhibit ''A'' does not render it invalid. The purpose of requiring the lien-claim to be filed in the clerk's office is that it may serve as a notice to all the world of the lienor's claim. It is in no sense a pleading. Hence decisions holding that an exhibit is no part of a *petition* are not in point. The lien-claim contains every element required by section 8217 of our statutes and was sufficient. The decision in Dwyer v. Flanigan, 87 Mo. App. 340, l. c. 347, held the lien-claim invalid, not because the account was attached to the claim as an exhibit, but because the exhibit was not in fact a statement of an account and did not disclose what materials were furnished. That the lien statement in this case sufficiently complies with the statute is supported by the case of Wilson Lumber Co. v. Watson, 158 Mo. App. l. c. 183.

There was evidence sufficient to show that the materials were bought and furnished within four months from the filing of the lien-claim. The testimony discloses that the materials were furnished on the date stated in the account, and these dates as written therein were fully explained. For instance, the figures ''1909'' at the head of the column meant the year, and the figures ''10/18'' in front of the first item meant October 18th and so on. As this *first* item was within the four months it was not necessary to show when the last item was furnished.

The judgment was not for a greater amount than was authorized. The petition did indirectly ask for interest, and all the papers connected with the lien and the sale on the goods showed that interest was to be paid. Besides, the amount of the judgment as *finally* entered, $729.27, is less than the amount due on a judgment for $689.62, the amount of the account with interest on the judgment from the date of its first rendition. There is nothing in the record which would justify us in disturbing the judgment of the trial court in any way. It is therefore affirmed. All concur.