HYDRAULIC PRESS BRICK COMPANY, a Corporation, Appellant, v. H. M. GREEN, LUCY TIMMONS, THOMAS F. MORROW, Trustee, and ALLEN INVESTMENT COMPANY, a Corporation, Respondents.

### Kansas City Court of Appeals, February 2, 1914.

1. **MECHANIC'S LIENS: Materialmen: Owner.** The provision of Sec. 8212, R. S. 1909, to the effect that any person who shall furnish any material for any building under or by virtue of any contract with the owner or proprietor thereof, or his agent, contractor or subcontractor, upon complying with the provisions of this article shall have for his materials furnished a lien, does not make the contractor the agent of the material-

man from whom he purchases materials for the construction, nor the agent of the owner for the purpose of making the owner personally liable for the payment of debts he incurs for materials.

2. **EVIDENCE: General Objection.** A general objection will not suffice to call evidence into question, but where it is wholly extrinsic to any proper issue of the case and is inadmissible for any purpose, such objection will be sufficient. The plaintiff is not required to keep renewing objections on which the court had ruled adversely, nor did it waive the objections by inducing a repetition of the objectionable matter in cross-examination.

3. **MECHANIC'S LIENS: Statement of Account.** As the statute (Sec. 8217, R. S. 1909), requires a lien statement to contain "a just and true account of the demand" a claimant who intentionally fails to file a just and true account will be punished by the loss of his entire lien, but will not be punished for honest mistakes.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

REVERSED AND REMANDED.

*Botsford, Deatherage & Creason* for appellant.

(1) Where evidence is wholly irrelevant a general objection is sufficient; and a review of the same may be had in the appellate court. Beard v. Car Co., 63 Mo. App. 391-392; State v. Meyers, 99 Mo. 120; State v. Patrick, 107 Mo. 154; Coquard v. Pendergast, 35 Mo. App. 245-246. (2) Where evidence is inadmissible and a seasonable objection to the same is made and overruled, it is not necessary for the objector to repeat his objection when similar testimony is offered, but all of such evidence will be reviewed by the appellate court without a renewal of the objection to its admissibility. Castigan v. Transfer Co., 33 Mo. App. 291; Schierbaum v. Schemme, 157 Mo. 22; Kreuger v. Railroad, 94 Mo. App. 462; 46 Century Digest, columns 909-931, Secs. 169-182; 46 Century Digest, columns, 941-942, Sec. 192. (3) An objection to incom-

petent evidence is not waived by the objector requiring the witness on cross-examination to repeat the objectionable statement. Baker v. Railroad, 126 Mo. 151; Miles v. Railroad, 76 Mo. App. 489; Castigan v. Trust Co., 33 Mo. App. 291.

*Moore Handy, Swearingen & Olson* for respondents.

JOHNSON, J.—This is an action to enforce a mechanic's lien prosecuted by a subcontractor or materialman against the original contractor, the owner of the premises, and the trustee and beneficiary in a deed of trust on the property. The jury found for plaintiff against defendant Green, the contractor, and for the remaining defendants on the issues relating to the lien. Judgment was rendered accordingly and plaintiff appealed. The defendant owner, Lucy Timmons, answered by attorney but appeared alone at the trial and conducted her defense with such success that she prevailed with the jury in the face of uncontradicted evidence that the material for which the lien was filed was sold and delivered to the contractor for use in the construction of the building at reasonable prices and that practically all, if not all, of it was so used. Satisfied with her success she made no appearance in this court either in person or by attorney but as she is the respondent and the burden is on her opponent, the appellant, of showing that she obtained the judgment by means of prejudicial error, we shall give as full consideration to her side of the issues before us as we would had she appeared and presented the reasons on which she relies for an affirmance of the judgment.

Counsel for plaintiff, in their brief and argument, naively and unnecessarily attempt to refute the idea that the failure of their opponent to procure a lawyer to represent her at the trial gave them any ad-

vantage. "It might seem at first blush," they say, "that the plaintiff would have a great advantage under such circumstances, but we, as we have had the experience in trying a case against a woman who represents herself, agree with the learned trial judge, when he told Mrs. Timmons at the close of the trial that she won her own case and that no two lawyers in this city could have won it for her." With some animation they ascribe their defeat to other causes than that of superior legal ability in their untrained but acute and aggressive antagonist, and we proceed to center our attention on these ascribed causes to see whether, in truth, they existed and afford sufficient ground for a reversal of the judgment.

At the trial plaintiff proved apparently beyond the possibility of successful contradiction that in good faith it sold and delivered brick of the value of $358.80 to the contractor for the improvement; that the material was so used, that only $8.80 of the account was paid and that all necessary steps were taken for preserving and enforcing a lien against the property for the remainder. Beginning with the cross-examination of the contractor, Mrs. Timmons, to whom we shall refer as the defendant, directed her efforts principally to eliciting proofs of delinquencies of the contractor in the performance of his contract with her. Counsel for plaintiff, by somewhat general objections, endeavored to prevent this digression and to keep the inquiry within the issues made by the pleadings, but on the overruling of these objections, they seemed to lose heart, objected no more and apparently lapsed into a condition of stupefied quiescence.

By means of Socratic questions embracing their own answers put to both friendly and unfriendly witnesses and of a torrential narrative of all her dealings with the contractor, defendant was suffered, without let or hindrance, to make the innocent plaintiff (whose sole offense consisted in furnishing the brick

for her new house) suffer vicariously for all the misdeeds, mistakes and negligences, real or supposed, of the contractor. The following quotation from the argument of counsel for plaintiff contains a partial recital of the wrongs defendant was allowed to show she sustained:

"It should be noticed in this connection that it is conceded that there was a two-story flat building erected by the defendant Green for defendant Lucy Timmons, and that the brick of plaintiff Hydraulic-Press Brick Company were used in the construction of the walls of that building. Whether or not the roof leaked and whether or not the brick were properly set in mortar, and whether or not the floor sagged or whether or not defendant Green forced or tried to force defendant Timmons to put a loan on the property, or whether or not defendant Timmons was a widow, or whether or not defendant Timmons was forced to take possession and rent the building in order to get her income, or whether or not defendant Green guarded the building for awhile with a gun as long as defendant Timmons, or whether or not Mrs. Timmons paid some of the bills with her private money, or whether or not rains came and washed away some of the sand that was furnished by other people than the plaintiff, or whether or not water soaked down the wall, or whether or not the plaintiff thought the credit of defendant Timmons, with whom it did not contract, would be good for a load of brick, or whether or not Mr. Green and Mrs. Timmons tried to make settlement, or whether or not four of defendant Timmons' attorneys became friendly with defendant Green, or whether or not the hundred and one other improper and incompetent and prejudicial statements made by defendant Timmons were or were not true—whether any of these matters happened or did not happen, was wholly immaterial, incompetent and irrele-

vant and highly prejudicial to the plaintiff's rights in this case."

Further defendant, over the objection of plaintiff, was allowed to show that the contractor estimated the total cost of the brick for the building would not exceed $300 and, consequently, that he bought brick of the value of $58.80 in excess of the quantity actually needed and used. There is no evidence tending to connect plaintiff with such asserted wrong and when all the evidence is analyzed, it affords scant foundation for the charge against the contractor. The dimensions of the brick walls show that not less than 43,350 bricks would be required in their construction; plaintiff sold and delivered 43,600, about 250 in excess of the number actually incorporated in the walls.

It appears that through an error of the contractor one of the walls was built over on the neighboring lot and had to be torn down and rebuilt. Defendant claims that in tearing it down the employees of the contractor through carelessness broke more brick than should have been broken. The brick taken down were piled on the floor and were rained on and made so heavy that the floor gave way and dumped them into the cellar. More bricks were broken in this mishap and rendered unfit for use. The result was that neighbors built backyard walks out of brickbats for which plaintiff would have a lien against defendant's property. The evidence of defendant in support of these charges against the contractor and his servants is not strong or convincing while the evidence of plaintiff that no more bricks were bought than were required to build the walls, taking into consideration the usual and unavoidable wastage, is most convincing. But conceding that defendant's evidence on this subject is substantial, still it is certain that plaintiff did not participate in or know of any such misconduct on the part of the contractor, but in good faith furnished the ma-

terial in the reasonable belief that all of it would be consumed in the improvement.

On behalf of defendant the court instructed the jury: "Before you can find that plaintiff is entitled to a mechanic's lien against the property described in these instructions, you must find and believe from the evidence that substantially all of the brick sued for was furnished by plaintiff to defendant, Green, and actually entered into the construction of the building in question, and that the price charged therefor is reasonable and just."

The case appears to have been tried on an erroneous view of the nature of the respective relations of owner and contractor and contractor and materialman. The statute (Sec. 8212, Rev. Stat. 1909) provides that every person who shall furnish any material for any building "under or by virtue of any contract with the owner or proprietor thereof, or his agent . . . contractor or subcontractor, upon complying with the provisions of this article shall have for his . . . materials furnished a lien," etc. The contractor is not the agent of the materialman from whom he purchases materials for the construction, nor is he the agent of the owner for the purpose of making the owner personally liable for the payment of debts he incurs for materials. [Deardorff v. Everhartt, 74 Mo. 37; Miller v. Whitelaw, 28 Mo. App. 639.] But he is authorized by the owner to bind the property being improved for reasonable debts he incurs by contract in making the improvement.

A materialman who, under contract with the contractor erecting a building under contract with the owner, furnishes materials for use in the building which are so used, is entitled to a lien on the premises for the reasonable value of such materials and to enforce such lien regardless of the defaults and delinquencies of the contractor in the performance of his contract with the owner. In this view of the rela-

tions of the parties to each other it was improper to admit evidence of misconduct of the contractor towards defendant which manifestly had no bearing on the legitimate issues under investigation. Under the hypothesis, incontrovertibly established by proof, that the materials for which the lien is claimed were furnished under contract with the contractor for use in the building, were delivered and were priced at their reasonable value, the only remaining subject of judicial investigation was whether or not they were used in the construction of the building. Materials are said to be thus used when they are reasonably consumed in the improvement regardless of whether or not they are made an integral part of the permanent structure. Thus a lien will lie for lumber used in temporary scaffolding and for materials necessarily and reasonably wasted. There is always some waste of materials in the building of brick walls, as every one knows who has observed the laying of brick, and there can be no question that a lien will lie for all such materials reasonably consumed.

But the defense the court allowed to be interposed was not confined to the issues as thus defined. In its evidentiary stage it proceeded on the theory that the performance of the contractor's contract with defendant in all its phases and aspects was a proper subject of investigation and that plaintiff could not recover a lien for any of the materials it furnished, if the contractor had failed to discharge any of his contractual duties towards defendant.

The error of this view is apparent. It was proper for defendant to show that a part of the materials delivered by plaintiff were not reasonably required for the construction of the walls but were unnecessarily and unreasonably wasted by the contractor since the statute contemplates that a materialman may have a lien only for such materials as are reasonably needed by the improvement; but evidence of other acts of the

contractor in breach of his contract with defendant could have no possible bearing on the right of plaintiff to a lien and should not have been admitted. We hold that all of the evidence relating to the subjects enumerated in the quotation we have given from plaintiff's argument was foreign to the issues of the case and prejudicial to plaintiff. The fact that the objections made by plaintiff to such evidence were few and general and not persistent will not prevent us from reviewing and correcting such errors on appeal. [Beard v. Car Co., 63 Mo. App. l. c. 391; State v. Meyers, 99 Mo. l. c. 120; State v. Patrick, 107 Mo. l. c. 154; Coquard v. Prendergast, 35 Mo. App. l. c. 245.]

The rule stated in these cases is that where evidence is competent for any purpose or relevant to any issue in any way, a general objection will not suffice to call it in question, but where it is wholly extrinsic to any proper issue of the case, is inadmissible for any purpose, a general objection is sufficient. Nor was plaintiff required to keep renewing objections on which the court had ruled adversely. [Costigan v. Transportation Co., 33 Mo. App. l. c. 291; Schierbaum v. Schemme, 157 Mo. l. c. 22; Krueger v. Railroad, 94 Mo. App. l. c. 462.] Nor did it waive the objections by inducing a repetition of the objectionable matter on cross examination. [Barker v. Railroad, 126 Mo. l. c. 151; Miles v. Railroad, 76 Mo. App. l. c. 489; Costigan v. Trans. Co., supra.]

And further we find that the instructions given for defendant erred in directing a verdict for her on the hypothesis that a substantial part of the brick was not used in the construction of the building. Considering the state of the case at the time it was submitted the jury would have been justified in understanding from this direction that plaintiff could not have a lien for any part of its demands if a substantial part of the brick were consumed in reasonable and unavoidable waste.

But the most serious objection to the instruction is that it compelled a verdict for the defendant on the hypothesis that a substantial part of the brick were not used in the building regardless of all other considerations. If, as the evidence indisputably shows, plaintiff furnished the brick for which a lien is claimed for use in the construction and, at the time of filing the lien, in good faith and with reasonable cause believed that all such brick had been so used, it would be entitled to a lien for the value of those actually used regardless of the disposition the contractor made of the remainder.

The statute (Sec. 8217, Rev. Stat. 1909) requires the lien statement to contain "a just and true account of the demand." The claimant will be punished by the loss of his entire lien if intentionally he fails to file a just and true account but will not be so punished for honest mistakes. [Hydraulic Press Brick Co. v. Mc-Taggart, 76 Mo. App. 347; Dougherty v. Rothbaum, 156 Mo. App. 215.]

Defendant, in effect, conceded that brick of the value of $300 furnished by plaintiff entered into the construction. Her evidence bearing on her contention that the remainder, valued at $58.80, was not so used but was wrongfully converted or wasted by the contractor, is, as we have stated, unconvincing, but we regard it as of enough substance to carry that issue to the jury. Should it be accepted as true by the triers of fact, still plaintiff, in the absence of proof impugning its good faith, would be entitled to a lien for the materials actually used in the improvement in accordance with our definition of that term. For the errors noted, the judgment is reversed and the cause remanded.

All concur.