OLIVER L. TAETZ, INC., a Corporation, Respondent, v. URSULA GROFF, SPENCER GROFF, LOUIS B. ECKELKAMP, INC., a Corporation, Appellants, No. 42894—253 S. W. (2d) 824.

Division Two, January 9, 1953.

826

*Jerome A. Gross* and *W. R. Gilbert* for appellants Groff; *Anderson, Gilbert, Wolfort, Allen & Bierman* of counsel.

*Theodore P. Hukriede* and *Frank W. Jenny* for appellant Louis B. Eckelkamp, Inc.

830

*Oliver F. Erbs* for respondent J. D. Shepard d/b/a J. D. Shepard Radio & Electrical Service.

*Leo F. Laughren* and *Virginia B. Hukriede* for respondent Oliver L. Taetz, Inc.

834

TIPTON, J.—This is an equitable mechanic's lien suit brought by the respondent, Oliver L. Taetz, Inc., a corporation, in the circuit court of Franklin County, to recover a judgment against the appellants Ursula Groff and Spencer Groff, (hereinafter referred to as Groff), and Louis B. Eckelkamp, Inc., a corporation, (hereinafter referred to as Eckelkamp), for the balance due respondent for the construction of a building located at the junction of highways 50, 66 and 100, to have the judgment declared and adjudged to be a mechanic's lien upon the building, improvements and the land, and to have the lien declared a priority over a deed of trust held by the Bank of Washington. J. D. Shepard, doing business as J. D. Shepard Radio and Electrical Service, was a subcontractor who did the electrical installations. He was joined as a defendant and he filed a cross bill.

The trial court appointed Hon. Walter Wehrle as referee to try the issues except as to the issue of cancelling a lease on the property which was granted to Eckelkamp by Groff for a term of years. As to that issue a separate trial and judgment were ordered. In the main, the court approved the referee's report and rendered a judgment in favor of respondent and against Groff and Eckelkamp in the sum of $80,740.17, with a lien against the property and leasehold described in respondent's petition for $79,878.10. The lien was declared superior to the deed of trust held by the Bank of Washington which secured a note executed by Groff for $30,000, except for the sum of $8,000 that paid a prior deed of trust. Eckelkamp was given a judgment for $700 on his cross-claim against respondent. The Bank of Washington was **[827]** given a judgment on its cross-claim against respondent in the sum of $55,265.21 and J. D. Shepard was given a judgment against respondent in the sum of $2,027.26. These sums were to be paid out of respondent's judgment and a lien was rendered in favor of respondent and against Groff and Eckelkamp. Both have appealed.

There was formerly a building that was used as a restaurant and filling station on the tract of land in question but it was destroyed by fire in February, 1948. On April 29, 1948, respondent entered into a written contract with the appellants to erect a new building on this site suitable for a restaurant and other related businesses. The contract provided that the building was to be built in accordance with plans which were to be drawn by George F. Hayden, architect. This contract also contained the following provisions:

"6. The Parties of the Second Part shall pay the Party of the First Part for the performance of the work under this agreement as follows: On the 8th and 23rd day of each month the Party of the First Part shall prepare a statement showing the amount paid out by the Party of the First Part for all labor incorporated in the work hereunder during the preceding period, and within three (3) days thereafter, the Parties of the Second Part shall pay to the Party of the First Part the amount of such statement, plus an amount equal to eight per cent (8%) of the amount of such statement to cover social security costs, workmen's compensation and liability insurance incidental to the performance of the work under this agreement.

"7. In addition to the aforementioned sum so paid for labor and at the same time the Parties of the Second Part shall pay to the Party of the First Part the amount of all statements for all materials and sub-contracts furnished or ordered by Party of the First Part, Parties of the Second Part or their agents or representatives, and on the 8th and 23rd of each month as aforesaid, the Party of the First Part shall add to the statement submitted to the Parties of the Second Part the value of all materials and sub-contracts incorporated into the work during the preceding period and the Parties of the Second Part shall

pay to the Party of the First Part a sum of ten (10) per cent on the aggregate of the value of said material, labor and sub-contracts as a profit; and in addition thereto the Parties of the Second Part shall pay to the Party of the First Part the sum equal to four (4) per cent on the aggregate value of said labor and material and sub-contracts as an overhead expense."

On the date the contract was executed, the respondent began the construction of the building. At that time there was in existence only a pencil sketch of the building and it was estimated that it would cost approximately $65,000. However, after the plans were drawn by architect Hayden it was estimated the building would cost between $160,000 and $180,000.

As the work progressed the respondent submitted its statements for the cost of labor and the value of the building materials and supplies, plus the percentages provided for in the construction contract to appellants twice a month. These statements were paid until October 8, 1948. At that time Oliver Taetz discussed the non-payment of the statements with the appellants and then learned that the Groffs were the owners in fee of the land, and that on April 8, 1948, they had leased this land to Eckelkamp. He then found out that there was a disagreement between Groff and Eckelkamp about the lease and for that reason respondent had not been paid. Taetz was requested to furnish him with a segregation statement of certain items of labor and materials used in the construction from the beginning of the work to that time. Eckelkamp agreed to pay $50 for this clerical work. About the same time, respondent was requested to show on the statements presented to appellants the items ordered by Eckelkamp and the items ordered by Groff. Apparently this was requested for the purpose of keeping an account between Eckelkamp and Groff. After this request, respondent's statements [828] were all made out to the "New Diamonds Account." If the items shown were ordered by Eckelkamp, his name was also shown on the statement. The statements that showed items not ordered by Eckelkamp bore the name of "New Diamonds Account" and the name of Groff. It was not explained to Taetz why appellants wanted the statements made out in this manner. Respondent borrowed approximately $55,000 from the Bank of Washington to complete the building.

Respondent sublet the brick work in connection with the construction of the new Diamonds building to Thomas R. Pratt, a brick contractor from Farmington, Missouri, and the electrical work to J. D. Shepard, doing business as J. D. Shepard Radio and Electrical Services.

To shorten the record before the referee, it was stipulated by the parties to this action that the items of this account about which Oliver Taetz testified would be considered as if he had testified that they were used in the construction of the building, and the amount

charged would be treated as if he had testified that the charge was reasonable. During the course of this opinion we will observe this stipulation and will not state that there is evidence that the various materials and labor were used in the construction, and will assume that there is evidence that the charge was reasonable.

Other necessary facts will be stated in the course of the opinion.

At the outset the respondent concedes that it struck from its statement in the petition the 10% and 4% charges on electrical equipment returned to J. D. Shepard, amounting to $282.47. However, this sum was inadvertently included in the judgment. Of course, the judgment must be reduced by that sum.

It is our duty on this appeal to review and consider de novo both the law and the evidence before us, even though the trial court approved the report of the referee with a few minor exceptions. Baerveldt & Honig Construction Co. v. Dye Candy Co., Inc., 357 Mo. 1072, 212 S. W. 2d 65.

The respondent contends that the building contract itself was abandoned by appellants shortly after respondent started the construction. This contention is based on the fact that there were many changes and additions to the building during the course of construction, increasing the cost tremendously. It is true that the building that was completed was quite different from the one discussed at the time the construction contract was executed. At that time it was estimated the cost of the building would be from $50,000 to $65,000, but after the plans had been drawn by the architect the cost of the building was estimated to be $160,000 to $180,000. However, it must be remembered that respondent did not agree to build this building for a firm price but on a percentage of its cost. In other words, the more the labor and materials cost, the more money respondent would get for constructing this building. This construction contract contemplated that there would be changes made. Paragraph 11 of the contract provides:

"11. The Parties of the Second Part [appellants] may, without invalidating this agreement, order extra work or make changes by adding to the work; it being understood however that contract percentages as to payments shall be the same as those provided for in Paragraphs Six (6) and Seven (7) hereof."

The respondent was not prejudiced by the changes; in fact, his percentage of profit was increased because of the changes made in the plans. Moreover, Taetz testified that he completed the construction of the building. Under these facts, we hold the construction contract was not abandoned by the appellants.

The cases of Baerveldt & Honig Construction Co. v. Dye Candy Co., Inc., supra, Fuhler v. Gohman & Levine Const. Co., 142 S. W. 2d 482, Johnston v. Star Bucket Pump Company, 274 Mo. 414, 202 S. W. 1143, and Muench v. South Side National Bank, 251 S. W.

2d 1, hold that if the owner prevents the contractor from completing his contract, then the contractor can recover in quantum [829] meruit for the reasonable value of labor, materials and contractor's service in the erection of the building, and is not limited to the price stated in the contract.

"But where, as here, an express contract has been fully performed on plaintiff's part, and nothing remains to be done under it but the payment of money by defendant, which is nothing more than the law would imply, plaintiff may declare specially on the contract, or generally in indebitatus assumpsit as for the quantum meruit, at his election. The plaintiff does not repudiate the contract nor seek to avoid it in indebitatus assumpsit as for the quantum meruit, but offers the contract in evidence and his proof of compliance with it to sustain his case. The agreed price, if there is an agreed price, becomes prima facie evidence of the reasonable value of the service. But plaintiff may not recover more than the agreed price. Stollings v. Sappington, 8 Mo. 118; Perles & Stone v. Childs Co., 340 Mo. 1125, 104 S.W. 2d 361; American Surety Co. v. Fruin-Bambrick Const. Co., 182 Mo. App. 667, 166 S.W. 333; 5 C. J. 1386, 1387, 1388." Fuldner v. Isaac T. Cook Co., 127 S.W. 2d 726, l.c. 731. See, also, C. H. Robinson Co. v. Frissell, 132 S.W. 2d 1049.

It is clear from the cases just cited that respondent may recover in quantum meruit for its services, notwithstanding there is a contract fixing the price to be paid for the services, but recovery may not exceed the contract price. There is no doubt that the present action is one in quantum meruit; in fact, there is no contention otherwise.

Both appellants contend that they were overcharged on the heating and plumbing items. Respondent carried in stock many items of plumbing which he obtained at wholesale because he was a licensed plumber. Respondent added 35% to the wholesale price of the plumbing and heating items, and thereafter 10% and 4% as provided by the construction contract. It is true that Taetz and another witness testified that a 35% increase over the wholesale price was reasonable, but we have just held that he could not recover any amount in excess of that which the construction contract provided. Appellants contend that under the contract respondent could add only 10% and 4% above what it cost him.

Respondent contends that the construction contract permits it to charge the reasonable value intead of the cost of the items. When the contract as a whole is construed, especially paragraphs 6 and 7, we conclude that respondent is entitled to add only 10% and 4% to the price it paid for the plumbing and heating items. In paragraph 6, we find "the Party of the First Part shall prepare a statement showing the amount paid out by the Party of the First Part for all labor incorporated in the work." In paragraph 7, the following language is used, "the Parties of the Second Part shall pay to the Party of the

First Part a sum of ten (10) per cent on the aggregate of the value of said material, labor and sub-contracts as a profit." It seems to us this contract limits respondent's profits to 10% of the cost of material, labor and sub-contracts. To hold otherwise, respondent would receive two profits. We therefore hold that the plumbing and heating items should be reduced by the 35% charge above the wholesale price, and then the 10% and 4% should be added to the total amount of the heating and plumbing price that respondent paid for these items.

There was added to each hour paid the plumbing foreman 20 cents above his hourly rate of pay. To each hour the second plumber worked was added 15 cents in addition to his hourly rate of pay, and 10 cents was added to each hour the third plumber worked in addition to his regular hourly pay. But these amounts were not paid to these employees. They were retained by respondent for the use of trucks that were equipped with large tools and other equipment used to do heavy plumbing. There was testimony that these charges were reasonable but there was nothing in the construction contract that provided for such charges. These trucks were a part of the equipment of the contractor, and in the absence of an agreement to pay for the same these charges are not proper as it is [830] the duty of the contractor to "furnish all the tools and necessary appliances for the work contracted to be done." Shaw v. Beaumont Company, 88 N.J. Eq. 333, 102 Atl. 151, 2 A.L.R. 122. Therefore, these items should be deducted from the labor costs. Then the 10% and 4% should be added to the total labor items for plumbing and heating that remains after these deductions are made.

█ The appellants contend that the following item charged on the account, "Final payment on account Thos. R. Pratt, Bricklaying Contractor - - - $4,917.48," is insufficient to sustain either a personal judgment or a lien.

The account which the mechanic's lien law contemplates is such as fairly apprises the owner and the public of the nature and amount of the demand asserted as a lien. In determining if it does fairly apprise the owner and the public of the nature and amount demanded, the lien account must be considered as a whole. Mitchell Planing Mill Co. v. Allison, 138 Mo. 50, 40 S.W. 118, 60 Am. St. Rep. 544; Leach v. Bopp, 223 Mo.App. 254, 12 S.W. 2d 512.

When this item is examined in connection with the entire lien account filed, it would be concluded that Thos. R. Pratt had a contract to do the brick work necessary for the construction, that other items showing the price of brick and the amount paid for labor in connection with the brick was paid by respondent to this subcontractor, and that there was a balance of $4,917.48 due the subcontractor. We hold that this item would fairly apprise the owners and the public

what was contained in it. It is not subject to the criticism of appellants that it is a "lumping item."

Appellants contend the items showing that the bricklayers were paid $3 a day for board and room are not subject to a lien. The evidence shows that there is a union regulation that bricklayers who work as far away from home as these bricklayers did must be furnished their board and room. As we view this contention, we think that under the facts before us their board and room is as much a part of their daily pay as the cash these bricklayers received for their day's work.

This exact question was before the Iowa Supreme Court in the case of Crane Co. v. Westerman, 8 N.W. 2d 412. That court held that inasmuch as the board and room was part of the contract of employment that it was a lienable item. We hold this assignment is without merit.

It is true respondent failed to introduce in evidence the written contract with Pratt for the brick work. There was no objection that this oral testimony was not the best evidence. We cannot see where there could be drawn any unfavorable inference because the written contract was not introduced in evidence. Moreover, the written contract was only collaterally involved in this action and it was not necessary to introduce it in evidence. 20 Am.Jur. 367, sec. 406.

Appellant Groff contends that the item designated, "Work, materials and labor in installing cement coping as per contract," amounting to $539.60, should not have been allowed as it was defective, and the court erred in allowing that item. Groff did file a motion to make certain items in the complaint more definite and certain, but this item was not mentioned in that motion. It is fair to assume that both appellants were satisfied with this allegation and that the allegation fairly apprised them of the nature and extent of the work and the kind of materials entering into these items. This is especially true when this item is considered with the lien statement as a whole. We think this item is a "substantial compliance with all the requirements of the statute, according to its reasonable intent." Hanenkamp v. Hagedorn, Mo. App., 110 S.W. 2d 826, l.c. 829.

Appellant Groff contends that the trial court erred in permitting recovery of a balance of $4,558.29 of the separate account of respondent for items furnished appellant Eckelkamp. The record does not support such contention. As previously stated, in October, 1948, Eckelkamp requested Taetz to furnish him with a segregation of certain items from the beginning [831] of the work to that time, and agreed to pay $50 for the clerical work. (Of course, this $50 is a personal debt of Eckelkamp.) We have already shown how the items after that date were to be designated. Both Groff and Eckelkamp received a statement at each statement period named in the construction contract. Evidently, the appellants wanted these items separated because of some understanding between them. It may have been because of the lease agreement. Taetz testified that at this time

he learned for the first time that Eckelkamp had only a lease on this ground. There is nothing in the construction contract that would indicate any agreement that all appellants were not the owners of the fee. All appellants contracted for the construction of the building. In fact, in their briefs the Groffs admit that they and Eckelkamp were jointly erecting the building. It is not contended that the items represented by the $4,558.29 did not go into the building.

We hold that appellants Groff and Eckelkamp are jointly liable for all material and labor items that were used in the building they were jointly erecting. Berkshire Lumber Co. v. J. S. Chick Inv. Co., 170 Mo.App. 1, 155 S.W. 904.

For the reasons just stated, the balance due J. D. Shepard, the electrical subcontractor, of $2,027.26 is justly owed by both Groff and Eckelkamp. However, the trial court erred in allowing a credit of 10% on some electrical items that Shepard had not installed and were usable, and for which he gave credit on the account. The allowance of the amount of $433.08, which was a charge of 8% of the labor charge by Shepard of $5,413.50 for social security tax, compensation and liability insurance, under paragraph 6 of the construction contract, is improper because Shepard testified that he did not charge respondent with social security tax and that he did not carry any compensation or liability insurance. We do not think there is substantial evidence that this item was paid by respondent and it should not have been allowed.

As we read the record, there are certain electrical items that were not completely installed, for example, electrical controls for the heating system, but we are of the opinion the trial court properly included these and other similar items for the reason Shepard was prevented from completing their installation by the appellants on September 15, 1949.

Appellant Eckelkamp contends that a charge of $282.96 for fuel oil used to heat the building so that the plaster would not freeze before it dried and thereby be damaged or destroyed was not properly a lienable item. In order to maintain a lien for materials furnished, it is not necessary in all cases that such materials should actually have gone into the structure and form a part thereof. It is sufficient that their use was necessary, and they were, in fact, used or consumed in the building. Rapauno Chem. Co. v. G & N Ry. Co., 59 Mo.App. 6. See, also, Hydraulic Press Brick Co. v. Green, 177 Mo.App. 308, 164 S.W. 250.

We therefore hold this item for heating oil was properly a lienable item. For the same reason there are other small items that were necessary for use in the construction that we will not enumerate, for example, brushes and steel wool, that the trial court properly allowed as lienable. However, gravel that was used by Eckelkamp across the highway was not a proper charge in this account.

Appellant Eckelkamp contends that the account shows that

one Crane Company Fitzgibbon steel boiler for oil, D. M. 61, was charged twice. This charge was made prior to the time the statements showed who ordered the particular work done. Groff did not believe that two boilers were needed and refused to let the second one be installed. The account was then credited as paid and charged to Eckelkamp only. It is true that about this time Eckelkamp paid $2,500 to respondent but that sum was credited on the running account and not for this particular item. That is evidently what the trial court found. We defer to its ruling.

The agreed price is prima facie evidence of the reasonable value of the materials and labor rendered. Fuldner v. Cook, supra. Therefore, we think the trial court properly allowed respondent 10% as profit and 4% as overhead expense.

It follows that the judgment should be reversed and remanded with directions to enter a new judgment in conformity with this opinion. All concur.