BAERVELDT & HONIG CONSTRUCTION CO., a Corporation, v. DYE CANDY COMPANY, INC., a Corporation, Appellant.—No. 40426.—212 S. W. (2d) 65.

Division Two, June 14, 1948.

*John F. Reinhardt, Thompson, Mitchell, Thompson & Young* and *Richard D. Shewmaker* for appellant.

1074

*Edward C. Schneider* for respondent.

██ WESTHUES, C.—Plaintiff obtained a judgment in the sum of $9,564.04 against defendant as a balance due for labor and material furnished in the reconstruction of a building which had been destroyed by fire. The court also entered a judgment in the sum of $2,108.87 as interest, making a total of $11,672.91. This sum was declared to be a lien on the building as provided for in the Mechanics' Lien Law. The court also entered a general judgment against defendant in the sum of $105.80 for items found not to be governed by the Mechanics' Lien Law. Defendant was denied relief on its counterclaim. Failing to obtain a new trial, defendant appealed.

██ This case was referred to and tried by a referee. The court overruled exceptions which were taken to the report of the referee and the report was confirmed. Appellant urges that the case is here to be reviewed and consideerd de novo on both the law and the evidence. Sec. 114 of the Civil Code of Missouri, Laws 1943, page 387, Sec. 847.114 Mo. R. S. A., is cited as authority. Respondent says that this court is bound by the finding of the referee, as confirmed by

the trial court, and can only review questions of law. Sec. 1159, Mo. R. S. A., R. S. Mo., 1939, is cited as authority. It is true, as respondent contends, that before the adoption of the New Code of Civil Procedure, a finding and report of a referee, when confirmed by the trial court, had the same force and status on appeal as a verdict of a jury. Sec. 1159, supra, was so construed. See Paisley v. Lucas, 346 Mo. 827, 143 S. W. (2d) 262, l. c. 266 (1, 2). Respondent, evidently thinking that Sec. 114 of the Civil Code may be applicable, says that the section applies [66] only to cases tried by the court and not to cases tried by a referee. Sec. 1159 provides that if the report of the referee is confirmed by the court, ". . . judgment shall be rendered thereon in the same manner and with like effect as upon a special verdict." Note that the section does not specifically govern the question of a review of the judgment on appeal. Sec. 114, supra, prescribes the procedure to be followed in cases tried upon the facts without a jury. Subdivision (d) reads in part as follows:

"The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature."

Sec. 114, when considered alone, is all inclusive and governs cases tried by a referee as well as cases tried by a trial judge. It seems to be in conflict with the interpretation placed on Sec. 1159, supra. If we adopt the interpretation contended for by respondent and hold that cases tried by a judge are reviewable de novo as to the evidence as well as the law, and that cases tried by a referee are reviewable only on questions of law, we come face to face with the question of whether such a classification can be sustained. That question was before this court in the case of State ex rel. Saline County v. Wilson, 288 Mo. 315, 232 S. W. 140. A reading of the opinion in that case will disclose that in the year 1919 the legislature enacted Sec. 1444 R. S. 1919, which provided that all cases wherein a referee had been appointed and had made a report, the appellate court should review the evidence, finding of fact and conclusions of law of the referee and the trial court. This court in that case held the section unconstitutional because the statute applied only to cases where a referee had been appointed and heard the case. Law cases tried by a court without a jury were not included. This was deemed to be class legislation. See 288 Mo. 315, l. c. 334, where Judge Graves, speaking for the court, said:

"What is the reasonable basis for the classification made by this act? Why should one law case be tried de novo as in equity, and another law case be tried here solely upon errors, with the findings of fact binding here? To go further: Suppose after we tried the instant case de novo, we reversed and remanded it, and upon a retrial nisi, the trial court declined to refer, and tried the case, and appeal was taken by defendant, as is the case now. To the parties we would

have to say we can not hear your case *de novo,* on this appeal, because there was no reference trial and report.''

Sec. 1444, supra, was repealed by the legislature in 1931. See Laws 1931, page 188. If, as above mentioned, we adopt respondent's interpretation, law cases tried by a court will be reviewed both as to the law and to the facts, but if tried by a referee they will be reviewed only on questions of law. That would be the exact converse of the law as it was under Sec. 1444, supra. However, the rule as to improper classification would be the same. We believe the reasoning in the opinion by Graves, J.; sound. We are therefore confronted with the question, does Sec. 114 apply to all non-jury law cases, or must we declare the section unconstitutional because only applicable to cases tried by a trial judge? We believe it in keeping with the spirit of the new code and the rules governing statutory interpretation to hold that Sec. 114 governs all non-jury cases including those tried by a referee. In such cases a referee is the alter ego of the trial judge, as stated in Roloson v. Riggs, 274 Mo. 522, 1. c. 528, 203 S. W. 973, 1. c. 974, a case tried by a referee:

''The Daviess circuit court overruled all the exceptions filed by both plaintiff and defendants, and entered a decree confirming said report and findings of both law and fact. In view of the foregoing, the case stands before us as if the findings of fact and conclusions of law had been made by the trial court.''

Sec. 2 of the Civil Code provides that the code ''. . . shall be construed to secure the just, speedy, and inexpensive determination of every action.'' In conformity with this policy the code provides that in law cases tried before a jury a trial court may, after verdict, entertain a motion to set aside the verdict and judgment on the ground that they were not supported by evidence [67] and enter a judgment for the opposite party. On appeal, if such an order is deemed to be erroneous, the verdict and judgment may be reinstated thus saving the expense of a new trial. There is no sound reason why the same procedure cannot be followed in law cases tried by the court or a referee as in equity cases, that is, have the appellate court review the case de novo and if it be found that the trial court erred enter such a judgment as ought to be entered and not remand the case for retrial. The legislature, having experience with Sec. 1444, was cognizant of the fact that it could not under the constitution prescribe one procedure in non-jury cases tried by a referee and another in those tried by a judge. Since there is a seeming conflict between Sec's. 1159 and 114, supra, and since statutes must, if it can be reasonably done, be construed to be constitutional, we hold that Sec. 114 must control over Sec. 1159. Sec. 114 is plain and covers the subject matter fully and completely while Sec. 1159 applies to the situation only indirectly. Sec. 2 of the Civil Code says that the code shall govern the procedure in all courts unless otherwise pro-

vided by law. Since Sec. 1159 does not provide a procedure on appeal in reference cases it does not interfere with our conclusion.

Our attention has been called to the case of Industrial Bank & Trust Co. v. Hesselberg, 195 S. W. (2d) 470, l. c. 473 (2,3). In that case this court held that we were bound by the report of a referee if confirmed by the trial court. However, it is evident from a reading of the opinion that the point now before us was not raised in that case. We desire to call attention to the case of Vannoy v. Swift & Co., 356 Mo. 218, 201 S. W. (2d) 350, where division one of this court reviewed exceptions filed to the report of a referee. The trial court had failed to grant the parties a hearing on the exceptions. This court considered the exceptions fully, both as to law and facts. The authority for doing so was the new code, particularly Sec. 847.140 (b), Mo. R. S. A.; Laws 1943, page 395, Sec. 140 (b). In State ex rel. Fawkes v. Bland, No. 40654, 357 Mo. 634, 210 S. W. (2d) 31, this court en banc considered provisions of the new code. For brevity sake the details of the case will not be stated. It will be noted that the case holds that on procedural matters the new code must be followed unless otherwise specifically provided by statute. It must be observed from that case that under the new code and under the new constitution cases reaching the Supreme Court on writs of certiorari, or cases transferred here from the courts of appeals for any reason, are heard de novo. All this goes to show that the spirit and letter of the law requires that appellate courts review de novo all non-jury cases. We therefore proceed to consider the case before us de novo both as to the law and to the facts.

Plaintiff in its suit seeks to recover an alleged balance due from the defendant for the reasonable value of labor and material furnished in the reconstruction of a building for the defendant which had been destroyed by fire. Defendant filed a counterclaim, in one count for an alleged overpayment in the sum of $2,240.55 and in another count for damages in the sum of $8,730 for failure to complete the building within the time specified in the contract. Plain-. tiff based its claim on quantum meruit, while defendant contends plaintiff should be restricted to the price stated in the contract and. a number of extras agreed upon. The referee found that the contract had been modified and abandoned and found in favor of plaintiff. Defendant contends such a finding was not authorized and that the written contract must control. That is the principal dispute. The evidence justifies the following statement of facts:

The property is located at 310-312 South 21st Street in the City of St. Louis, Missouri. The fire, which occurred on December 12, 1942, severely damaged a three story building located on the lots and the owner, the defendant in this case, began negotiations with plaintiff on December 29 for the rebuilding of the damaged structure. At first it was contemplated to rebuild the three stories, but due to

cost and some building regulations this was abandoned and two stories were agreed upon. Finally on February 1, 1943, a contract, rather indefinite in its terms, was [68] signed, wherein plaintiff agreed to construct a two story building for a total approximated price of $16,388, which figure included ten per cent for overhead and profit. At that time much of the debris from the fire was still present and it was difficult to determine the extent of the damage · The defendant was a manufacturer of candy and kindred products and was desirous to re-occupy the building as a factory as soon as possible. The contract provided that work should be commenced on February 4 and the building substantially completed within forty working days. It also contained the following clause:

"Where the quantities originally contemplated are so changed that application of the agreed unit price to the quantity of work performed is shown to create a hardship to the Owner or the Contractor, there shall be an equitable adjustment of the Contract to prevent such hardship."

The contractor was required to submit to the owner a monthly itemized statement of all money expended the previous thirty days for labor and material. This was complied with and the defendant was notified of what was being done. The defendant company was a closed corporation. Arthur W. Dye, president, lived in Kansas City, Missouri, where he managed a factory. His son, Ernest W. Dye, was the manager of the St. Louis factory. He was in St. Louis and was at the site daily, observing the work of rebuilding, inspecting the same and from time to time making suggestions as to changes which he had authority to do on behalf of defendant company. As the work progressed numerous changes were suggested and ordered. About April 15, Mr. Honig of the plaintiff company, who was supervising the work, informed Ernest that the extras were running over the estimate and that Mr. Arthur W. Dye should know what was being done. Mr. Dye came to St. Louis from Kansas City and, pursuant to a discussion over the situation, extras at an approximate cost of $2,200 were authorized. A letter dated April 30, addressed to the defendant company, confirmed the negotiations of April 17. This letter referred to changes numbered one to eighteen. The evidence shows that thereafter numerous other changes were ordered by Ernest W. Dye. Mr. Honig testified that about May 15 or so he again notified Mr. Dye that the extras were running far over the estimate to an extent of from thirty to forty per cent; that a discussion followed in which he told Mr. Dye the extras and changes were changing the whole situation; that Mr. Dye replied:

"I don't want to get into too much money, but the big thing is to get down and get out of here because I have to go on with my manufacturing."

Construction progressed, with Mr. Dye present inspecting the work and making further suggestions and changes. Both of the Dyes denied that any agreement had been made to pay plaintiff for any extras except those mentioned in the letter of April 30, written pursuant to a discussion of April 17. But even if there were no agreement, as defendant contends, changes were ordered after April 17 and plaintiff complied with the orders and constructed the building to the complete satisfaction of the defendant The only complaint the defendant has to make, as shown by the record, is that plaintiff should be bound by its contract. Note the indefiniteness of the evidence, as given by Mr. Arthur W. Dye, with reference to changes made after April 17, which were referred to as eighteen to forty-three inclusive:

"Q. All right, with reference to Item 19, was that included in your contract or not?

"Mr. Shrewmaker: I object to that as calling for a conclusion.

"The Referee: Overruled.

"A. I don't know whether it was or not.

"Q. Well, any of the items—will you look at Items 18 to 43, inclusive, examine that and tell me were any of the items included in your original contract under date of February 1st, 1943?

"Mr. Shewmaker: I make the same objection.

"The Referee: Overruled.

"A. I don't know.

"Q. You don't know. Now, do you know by looking at these items who ordered [69] that work to be done? A. I don't know.

"The Referee: Was the work done? A. The work was done."

\* \* \*

"Q. Now do you know whether those plans, whether the shaft and the size of the elevator which would necessarily increase the capacity and weight of the elevator, do you know whether it was enlarged? A. It was enlarged.

"Q. Who ordered the enlargement to be made? A. That was agreed—the enlargement was agreed both by myself and son that it should be larger.

"Q. Do you know how much larger it was made, Mr. Dye? A. Large enough to suit our purposes.

"Q. Now do you know when that change was made? A. No.

"Q. Do you know, if I told you according to the plan it was made on May 1st, would you say that would be approximately right? A. That may have been."

The same may be said as to the evidence given by Ernest W. Dye. Note the following:

"Q. The installation of cork floor, insulation office wall, etc., who authorized that? A. I did.

"Q. Was it included in the original contract?

"Mr. Shewmaker: The same objection.

"The Referee: Overruled.

"A. No.

"Q. Change office ceiling to Insulite small tile. Was that included in the original contract?

"Mr. Shewmaker: Same objection.

"The Referee: Overruled.

"A. No.

"Q. By whom was that ordered, that work? A. I can't be positive about that.

"Q. Raise the height of the first and second floors to get additional room, light and ventilation. Who ordered that change to be made? A. That was discussed even before the signing of the contract. As stated before, the second floor was only seven feet high and Mr. Honig intended to use columns from the first floor to carry the second floor, therefore, it was a natural conclusion.

"Q. Well, was that included in your contract? A. I don't believe it was." ·

\* \* \*

"Q. Install two sets of runs to unload two cars and install skid to basement for barrels. Was that included in the contract? A. It was not.

"Q. Did Mr. Honig tell you there would be a charge for that? A. There wasn't any discussion on it.

"Q. Was that work done by the plaintiff? A. Yes.

"Q. Install one additional downspout and change one after first installation. Was that work done? A. Yes. By Mr. Honig's contractor, whoever handled that work.

"Q. Who ordered that work to be done? A. Well, I fussed about it.

"Q. Well, was that included in the original contract? A. I'm not sure about that.

"Q. Double cross partition between toilets, No. 27. Was that work done? A. Yes, sir; by the plaintiff. That was Mr. Honig's suggestion and I concurred.

"Q. Was that included in the contract?

"Mr. Shewmaker: Same objection.

"A. No."

"The Referee: Overruled."

One single item, that of the change of the height of the first and second floors, added a cost of about $1500. It seems to us that in view of the numerous changes, some material and substantial and others trivial, the referee was justified in finding that the original contract was so modified and changed that it amounted to an aban-

donment thereof and that the only practical way to settle the controversy was to adjust the matter on a quantum meruit basis. Defendant says that the referee was confused as to the law; that he treated modification and abandonment as synonymous; that if a contract is modified it is still a contract. That may be true, however, the referee may have had in mind that the contract was modified to such an [70] extent as to constitute an abandonment of the original. Be that as it may, we find from the evidence that little attention was paid to the original contract in the construction of the building. A building was erected which was materially different from the one vaguely provided for in the original contract. It was erected as ordered by the defendant and according to suggestions made while the work was in progress. We hold that the original contract was abandoned by the conduct of the parties. We mention a few of the changes: The raising of both floors, the enlarging of the office space, the enlarging of the opening for the elevator, changing the construction of the toilet and substituting or changing materials. All of these changes were authorized and ordered by the defendant. It certainly would be unjust for defendant to have advantage of all these changes and plaintiff be restricted to his original contract price and only a few of the extras which were discussed by the parties on April 17. The record discloses that defendant is in possession of and using a building far better suited for its purposes than the original plan contemplated.

Defendant in its brief urges that plaintiff is only entitled to the amount specified in his contract and the additional sum for extras as stated in the letter of April 17, and that a contract can be abandoned only by the mutual assent of both parties. A number of cases are cited, among which we find the case of Fuhler v. Gohman & Levine Const. Co., 346 Mo. 588, 142 S. W. (2d) 482. That case is in many respects similar to the case before us and the rule there stated may well be quoted and applied to this case. Note what the court said:

"This is not a case where the contractor has failed to complete his contract or has breached it and refused to fulfill it. The plaintiff has sued in quantum meruit for the reasonable value of his work and labor. Under the circumstances we do not know how else he might have brought his action. The law is well established that where a contractor is prevented by the other party from fulfilling a building contract he may recover reasonable compensation for his work and labor regardless of the contract price. Kelly v. Rowane, 33 Mo. App. 440; Dempsey v. Lawson, 76 Mo. App. 522; McCullough v. Baker, 47 Mo. 401; Ehrlich v. Aetna Life Insurance Co., 88 Mo. 249.

"This rule is applicable in this case. Here the contractor made no breach of his contract. He performed work demanded of him, different and beyond that contemplated in the old contract which was abandoned, under a new implied contract. The fact that the plaintiff

may have set up as a bookkeeping item the amount specified in the original contract and then added the extras does not alter the true situation.''

We therefore must rule against the defendant and hold that plaintiff is entitled to recover on a quantum meruit basis.

What we have said disposes of defendant's counterclaim· for overpayment. Since plaintiff was required to make many changes, some of which required more time, and was compelled to do more work, the time specified in the contract for completion of the building cannot control. The building was completed and defendant took possession July 1, Under the circumstances the time of completion was not unreasonably delayed. We therefore find against the defendant on his claim for damages. The judgment of the trial court is therefore affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. *Leedy* and *Ellison, JJ.,* concur; *Tipton, P. J.,* not sitting.