Marion Thompson HOGAN, Administratrix of Estate of F. M. Thompson, deceased, Leda S. Thompson and Marion Hogan, d/b/a Thompson Canning & Cold Storage Company, Plaintiffs-Respondents,

v.

Ben KROHN and Zula Krohn, Defendants-Appellants.

No. 46290.

Supreme Court of Missouri,

Division No. 1.

Nov. 10, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 8, 1958.

Opinion Modified on Court's Own Motion Dec. 8, 1958.

164

A. W. Landis, Richard D. Moore, Green & Green, West Plains, for appellants.

Hogan & Hogan, Robert E. Hogan, Michael W. Hogan, West Plains, for respondents.

VAN OSDOL, Commissioner.

This is an appeal by defendants from a judgment and decree in favor of plaintiff Marion Thompson Hogan, administratrix, in an action, primarily an accounting, which action was originally instituted by F. M. Thompson, now deceased, Leda S. Thompson and Marion (Thompson) Hogan. The original plaintiffs had stated they were partners doing business under the firm name of "Thompson Canning & Cold Storage Company."

The case involves an alleged joint venture of the original plaintiffs and defendants in berry-canning operations in 1946 at Company's plant at Alton in Oregon County, and a berry-canning operation in 1950 by defendants at Company's plant at West Plains in Howell County. A claim on a promissory note and a counterclaim for wages are also involved.

Plaintiffs had declared in three counts. In Count I, plaintiffs alleged they were owners of a factory building and canning equipment at Alton, and had entered into a written agreement with defendants by the terms of which agreement defendants were to use plaintiffs' canning plant for processing and packing blackberries during the berry season of 1946, the defendants to perform all services in buying, canning, storing and marketing the berries, and they to account to plaintiffs for half of the profits. (The contract was purportedly between the original plaintiff F. M. Thompson and defendant Ben Krohn.) The respective parties were also to bear half of the losses, if any. It was alleged that plaintiffs were to furnish the factory building and the equipment for canning; and plaintiffs were to "furnish the capital for the operation of

said canning plant." It was further stated that defendants had bought, processed and sold large quantities of berries during the 1946 season for which they had failed to account. Plaintiffs prayed for an accounting and such further relief as might seem just and proper.

By Count II, plaintiffs sought the recovery of half of the net proceeds of berry processing and sales during the 1950 season, pursuant to an oral agreement by which defendants were permitted to operate plaintiffs' plant at West Plains during the nighttime (after plaintiffs had ceased their berry-canning operation during the daytime), and by which oral agreement, it was alleged, defendants were to furnish their own capital and labor, and market the berries so processed and packed by them and to pay to plaintiffs half of the net income "as an attempt to pay to plaintiffs the defendants' share in part for the losses of the 1946 operation * * *." It was further alleged in Count II that defendants had converted packing cans of the reasonable value of $3,100; and had sold quantities of berries during the 1950 operation and had failed to account for all of plaintiffs' half of the net profits.

In Count III, plaintiffs stated a claim on a note executed by defendants in the principal sum of $425 for which plaintiffs prayed judgment, also to include interest and a reasonable attorney's fee.

Defendant Ben Krohn (hereinafter sometimes referred to as "defendant") filed separate answer in which he admitted stated paragraphs of plaintiffs' petition and denied others. Defendant Zula Krohn filed no answer. Defendant Ben Krohn also stated four counterclaims. By Counterclaim No. I, defendant sought recovery upon breach of an alleged agreement by which plaintiffs were to provide defendant with an adequate plant at Alton. It was averred that the plant furnished by plaintiffs was unsanitary and inadequate and was closed by order of "Government Inspectors" be-

fore the end of the berry season of 1946 with resultant loss of net profits of $15,-000, for half of which defendant prayed judgment. By Counterclaim No. II, defendant alleged plaintiff F. M. Thompson had taken "complete charge of the entire (1946) pack," and had disposed of the pack at a profit of $30,300, for half of which defendant prayed judgment. By Counterclaim No. III, defendant sought recovery of damages for conversion of packing cans and of $1,040 in money, proceeds of defendant's 1950 nighttime operations at plaintiffs' plant, in total amount of $5,-000. And by Counterclaim No. IV, defendant sought recovery for labor to be credited on and in discharge of the $425 note (declared on in Count III of the petition) and for $590, balance alleged as due defendant for labor.

The cause was referred to a referee who from time to time heard the evidence introduced by the parties in support of their respective claims and counterclaims.

November 22, 1955, prior to the filing of the referee's report, the death of one of the original plaintiffs, F. M. Thompson, was suggested by defendant, and the trial court thereafter at defendant's request ordered the substitution of Marion Thompson Hogan, "administratrix of the alleged partnership estate of F. M. Thompson, deceased," in lieu and instead of plaintiff F. M. Thompson. (By its findings, judgment and decree, more particularly referred to infra, the trial court held that defendants Leda S. Thompson and Marion Thompson Hogan [individually], originally plaintiffs, "are not parties of interest * * * and their claims are hereby dismissed and no costs assessed against them.")

In his report filed, the referee undertook to analyze and weigh the evidence introduced in support and in refutation of the charges and credits claimed by the respective parties and arrived at conclusions

in accounting in favor of defendants, but recommended a finding for plaintiffs on the promissory note, in effect ultimately resolving into a recommended finding for defendants and against plaintiffs in the total amount of $1,384.75, as follows,

| | | |
|---|---:|---:|
| Received and credited by Thompson to the 1946 Alton operation: | | |
| From: | | |
| George Mains (Creole Kitchens), Philadelphia | $ 23,271.00 | |
| Berries "sold by Ben Krohn" | 6,070.00 | |
| Recovery of damage to goods in transit | 261.00 | |
| Hershey Brokerage Company, Kansas City | 8,716.47 | |
| Bill Sandweg (Clements Co.), St. Louis | 383.04 | |
| Ambrose, Denver | 1,740.00 | |
| Clyde Collins, Memphis | 6,300.00 | |
| Total Receipts | $ 46,571.51 | |
| Our correction of the referee's error in addition | 170.00 | |
| | $ 46,741.51 | $ 46,741.51 |
| Capital advanced by Thompson to 1946 Alton operation: | | |
| Cash | $ 41,700.00 | |
| Packing cans | 2,757.00 | |
| | $ 44,457.00 | $ 44,457.00 |
| Profit – 1946 Alton operation | | $ 2,284.51 |
| One-half of profit | $ 1,142.25 | |
| Berries received by Thompson from Krohn during defendants' 1950 West Plains nighttime operation | 1,040.00 | |
| Amount due defendants Krohn (without including the referee's computation of interest) | $ 2,182.25 | $ 2,182.25 |
| Less: Note to Thompson from Krohn | | |
| Principal | $ 425.00 | |
| Interest from 7–8–47 | 297.50 | |
| Attorney fee | 75.00 | |
| | $ 797.50 | $ 797.50– |
| Balance due defendants | | $ 1,384.75 |

———◆———

Exceptions were filed by the parties, plaintiffs and defendants, to the referee's report. The trial court overruled all exceptions filed by defendants, confirming the referee's findings upon which defendants had excepted; and sustained in part and overruled in part the exceptions filed in behalf of plaintiffs. In its findings, judgment and decree the trial court disallowed the sum of $6,070 shown in the referee's report as having been received for berries "sold by Ben Krohn," the trial court being of the opinion that this item should not have been allowed as a credit to the 1946 Alton operation. The trial court also allowed an item of $1,900 as a charge against defendants. Otherwise, the referee's report was in effect approved, including the recommendation of the referee that plaintiffs should recover on the promissory note de-

clared on in Count III. The trial court's judgment was for plaintiff administratrix in the aggregate of $3,918.35, including interest.

As we have indicated, supra, defendants have appealed from the judgment and decree. They, defendants-appellants, herein contend that the claims stated in plaintiffs' petition were those of plaintiffs as a partnership, and that the .claims upon which plaintiffs introduced evidence were those of F. M. Thompson only. It is said the trial court recognized this fact, inasmuch as the trial court in its findings, judgment and decree held that plaintiffs Leda S. Thompson and Marion Thompson Hogan were not parties of interest, and dismissed their claims. It is asserted there was a total failure of proof. Other assignments of error are supported by contentions that no substantial evidence supported the judgment and decree of the trial court in finding and entering judgment for plaintiff administratrix, and it is further urged that the trial court erred in finding adversely to defendants on the several counterclaims. Error is also assigned in the trial court's apportionment of costs.

■ Here issues of claims at law, as well as issues of claims of an equitable nature, were referred. The trial of the facts was without a jury. It is our duty to review the case upon both the law and the evidence as in actions of an equitable nature. Baerveldt & Honig Construction Co. v. Dye Candy Co., 357 Mo. 1072, 212 S.W.2d 65; Phelps v. Watson-Stillman Co., 365 Mo. 1124, 293 S.W.2d 429; Section 510.310, subd. 4 RSMo 1949, V.A.M.S.

In support of the contention of a failure of proof, defendants have cited, among other cases, the case of Dietrich v. Mothershead, Mo.App., 150 S.W.2d 565, in which case plaintiffs . in the first count of their petition had stated they were partners and alleged they had made an agreement with defendant, which agreement defendant allegedly had violated by wrongfully deducting from an account owing to plaintiffs amounts of rent, the collection of which defendant, it was alleged, had agreed to forego. The evidence showed the account was owed, not to plaintiffs, but to one of them. It was held there was a total failure of proof. In that case defendant by answer had denied plaintiffs were partners, and had denied any agreement with plaintiffs by which defendant was to forego collection of rent.

In our case the original plaintiffs had alleged they were partners and set forth their names in their petition, and defendants did not deny the existence of the partnership by specific negative averment. The existence of the partnership as alleged was to be deemed confessed. Section 509.150 RSMo 1949, V.A.M.S. Furthermore, in paragraph 1 of their petition, plaintiffs alleged *they* had entered into a written agreement with *defendants,* and in paragraph 2 plaintiffs alleged that by the terms of the agreement defendants "were to use said canning plant for the canning and packing of· blackberries during the 1946 season; that *defendants* were to perform all services in buying blackberries, canning, cold packing, storing and marketing; and to account to *plaintiffs* for one-half of the profits from such operations and also to pay one-half of the losses, if any, * * *." (Our italics.) Defendant Ben Krohn in his separate answer admitted "the allegations as contained in numbered paragraphs 1 and 2 * * *." And, as we have said, defendant Zula Krohn did not file answer. Apparently, the contention of failure of proof was an afterthought injecting an issue or issues into the trial of the cause already eliminated by the pleadings. It is true the referee excluded upon defendants' objection questions apparently designed to elicit testimony that the original parties plaintiff were partners; that defendants Ben Krohn and Zula Krohn were jointly engaged in the Alton operation; and that the contract was entered into by plaintiff Thompson with defendant to the benefit of the plaintiffs as partners. However, as stated, the issue defendants thus sought to

inject had been settled by the pleadings. It is also true that the trial judge in his final judgment and decree dismissed the case as stated by Leda S. Thompson and Marion Thompson Hogan and rendered a judgment and decree in favor of Marion Thompson Hogan, administratrix. We have noted that, upon defendant's suggestion of the death of F. M. Thompson, the defendant moved and the trial court ordered that Marion Thompson Hogan, administratrix of "the alleged partnership estate of F. M. Thompson, deceased, be and is hereby ordered substituted as plaintiff in this cause in lieu and instead of the said plaintiff F. M. Thompson, now deceased."

Generally, upon the death of a partner, the partnership is dissolved, the surviving partner succeeding to the rights of the deceased partner in the partnership assets for the purpose of winding up the partnership business, although the partnership has a continued existence until its assets are collected and distributed to creditors and the winding up of partnership affairs is completed. Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501; Wilson v. Hoover, 342 Mo. 1182, 119 S.W.2d 768; Hargadine v. Gibbons, 114 Mo. 561, 21 S.W. 762; Sections 358.250(4), 358.300 RSMo 1949, V.A.M.S.; 68 C.J.S. Partnership, § 275, pp. 770–771. We shall assume that the trial court erred in dismissing the case as to plaintiffs Leda S. Thompson and Marion Thompson Hogan, surviving partners. Of this error Leda S. Thompson and Marion Thompson Hogan have not complained. Nevertheless, in the protection of the parties from repeated litigation, and to the end of finally disposing of this already protracted litigation, we shall reverse the trial court's order of dismissal as to those plaintiffs, surviving partners, and direct their reinstatement as parties plaintiff.

We have examined the transcript of the evidence introduced at the referee's hearings, which hearings were held from time to time over a period of months. We note that the evidence introduced in support of many of the items to be taken into account was not entirely satisfactory in tending to show their verity. The records were fragmentary, and there were no complete records introduced of many transactions. The books, papers, memoranda, cancelled checks and correspondence introduced into evidence by the parties were not all of value on the issues, except as they were explained by verbal evidence. The explanations were sometimes inconsistent with other testimony of the same witnesses. It is inferred that the original plaintiff, F. M. Thompson, was of advanced age when he testified before the referee. He had suffered a "stroke" and had a vague recollection, it seems, of some of the complicated details of the transactions between the parties and with others during the berry seasons of 1946 and 1950. Defendant often testified of approximations without any documentary reference. And some of the fragmentary purported accounts manifestly were prepared during the course of the hearings before the referee. The referee and the trial court were, and we are obliged, in reviewing the evidence, to rely upon the unexplained admissions of the parties as to some items; to weigh the conflicting verbal evidence relating to other items and transactions; to draw inferences deemed reasonable from shown or admitted facts; and to adversely rule on asserted items insufficiently substantiated by evidence. The items which have been considered as insufficiently supported by evidence introduced by the respective parties having the burden of proof as to the items to justify a favorable finding thereon, include the items claimed by the respective parties for conversion of packing cans; an amount defendants claim plaintiffs received of proceeds of sales to Sandweg over and above the sum credited, $383.04; amounts plaintiffs claim as paid for transportation of canned berries; and an amount claimed by defendants as paid in rentals of plaintiffs' leased plant at Alton.

There was no dispute as to the ownership of the canning factory at West Plains. Neither was there a dispute as to the ownership of the canning machinery and equipment at the plant at Alton, nor as to the fact that the building housing the canning plant at Alton, was possessed by plaintiffs (or by F. M. Thompson) as lessees. The operation at Alton was conducted by defendant or by defendants under the name of the "Alton Canning Company." The evidence also shows that plaintiffs during the berry season of 1946 were operating their plant at West Plains. This was independent of the operation at Alton.

The testimony of Thompson, corroborated and not unequivocally disputed, supports the view that the parol agreement, relating to defendants' operation at West Plains in 1950, contemplated that plaintiffs should receive half of the profits of the operation and apply them "on the 1946 debt." This, it would seem, tends to negative defendants' theory that the Alton operation was "at a profit." However, since plaintiffs did not by evidence clarify the term "1946 debt," we interpret the intended meaning to be that the half of the profits of the 1950 operation was to be applied on the debt of defendants to plaintiffs as the result of the deficit or loss in the 1946 operation, rather than to the reduction of the whole deficit or loss in the 1946 operation. Also, plaintiffs had alleged in Count II, as noted supra, that defendants were to pay plaintiffs half of the profits of the 1950 operation "as an attempt to pay plaintiffs the defendants share in part for the losses of the 1946 operation."

■ Our examination of the transcript compels our agreement with the referee's report and the trial court's findings that F. M. Thompson had advanced to the account of the 1946 Alton operation the sum of $41,700 in cash and packing cans of value of $2,757—a total of $44,457.

One George Mains (Creole Kitchens) of Philadelphia had advanced plaintiffs $40,-000 on the purchase by Mains of canned berries plaintiffs could supply during the 1946 season. After the sale of a limited quantity of berries canned at the Alton plant by Krohn to one Sandweg (Clements Co.), it was arranged by Thompson and Krohn that the canned products of the Alton plant should be "turned over" to Thompson for Mains, although defendant Krohn testified he had already contracted to sell the entire output of the Alton plant to Sandweg at a price of 19½¢ per pound. In this connection, Krohn testified that Thompson represented that he had sold berries at 21½¢ per pound, and it is sought to charge plaintiffs with the output of the Alton plant consigned to Mains at a price of 21½¢ per pound; however, our examination of the whole of the evidence bearing upon this issue demonstrates to us that Thompson did not "buy" the berries of Krohn "at arm's length" at a price of 21½¢ per pound. Thompson testified there was "no price named." The evidence preponderates in supporting the view that the arrangement was made pursuant to Thompson's advice to Krohn that it "was his duty to let those berries go to George Main because it would help me out and it would also help Main out, and it'd help him (Krohn) out. It'd give him an outlet for his berries." This is not out of harmony with the contract relating to the Alton operation, which contract provided that the products "shall be sold to the best advantage of the parties hereto."

Defendant testified that thereafter the output of the Alton operation was "turned over" to Thompson. In our opinion the weight of the evidence supports the conclusions that these berries which were "turned over" to Thompson for Mains, or some of them, were stored at East St. Louis in Krohn's name; that Mains was charged and the Alton operation credited by Thompson with the berries "turned over" and which were received by Mains at the current price which, it may be reasonably inferred, was or should have been in total amount $23,271. While in storage some of the berries were found to be of

inferior quality and Mains rejected them. Storage charges accrued and during or after ensuing litigation Krohn sold the berries to the Sunshine Packing Company of Pennsylvania for $6,070 of which sum $1,900 remained after payment of the storage charges and other expenses, which sum admittedly has been retained by defendants. The inference is justified that the $6,070 so received is the item charged to plaintiffs by the referee as being berries sold "by Ben Krohn." The further inferences are that Thompson did not receive any of the proceeds of this sale; that the amount, $6,070, was incorrectly allowed by the referee as a credit to the 1946 operation, and should be deducted from the total receipts, $46,741.51, as shown by our statement of the summation of the referee's report, supra; and that the $1,900 net proceeds of the sale to the Sunshine Packing Company and retained by defendants should be taken into account. These apparently were also the trial court's views.

However, in our examination of the whole record, we have become convinced that the referee and the trial court overlooked an item which should have been taken into account.

Defendants introduced a check dated July 20, 1946, drawn by the Alton Canning Company on that company's account at the Alton Bank payable to the First National Bank, which check carried the direction— "Deposit to F. M. Thompson." The check bears the endorsement of the First National Bank of West Plains and shows perforations indicating payment July 25, 1946. The ledger sheet of Alton Canning Company's account at the Alton Bank shows the check was charged to Alton Canning Company's account on the last-named date. Defendant testified the check was for the major part of an amount remaining of the cash ($41,700 advanced by plaintiffs) after "we had got through

packing" at Alton; and that he had forwarded the remittance to Thompson at Thompson's request. Plaintiffs made no other explanation of this item, and we have the view the amount, $500, should be deducted from the item $44,457—"Capital advanced"—as shown, supra, in our summary of the referee's report.

■■ This opinion thus far has treated with and disposed of the issues in accounting raised by Counts I and II of the petition, and by Counterclaims Nos. II and III. The note, subject matter of Count III, was admittedly executed by defendants for money lent. There is no contention that the note was paid other than by labor as declared on in Counterclaim No. IV. The evidence shows that defendant had worked for Thompson. Defendant testified he had worked in September, 1946, and until May or June, 1947, for which work he had received "possibly * * * one or two small checks." Plaintiffs introduced thirteen checks (several carrying the notation "for labor") indicating payments to defendant which Thompson testified were in full payment for labor performed by defendant. Defendants also failed to develop sufficient evidence to establish their claim of damages as stated in Counterclaim No. I. Assuming plaintiffs had undertaken to provide a plant and equipment at Alton which were adequate and suitable, the evidence was insufficient in demonstrating that the plant was closed because of an inadequate or unsuitable condition of the plant or equipment. Indeed, the evidence was in conflict on the issue that the plant was ever closed by order of governmental authority. But assuming the plant was closed by order, no sufficient evidence was introduced which would justify the finding of a profit, and the amount thereof, which the plant, had it been operated, would have yielded during the period it was closed.

In summation of the results of our consideration of the evidence and in deciding all of the issues raised by the pleadings, we set forth a statement of our findings as follows,

| | | |
|---|---|---|
| Capital advanced by Thompson to 1946 Alton operation— | | |
| Cash and cans | $ 44,457.00 | |
| Less: Cash returned by Krohn after 1946 season | 500.00– | |
| | $ 43,957.00 | $ 43,957.00 |
| Receipts credited to 1946 Alton operation (not including $1,900 retained by Krohn) | $ 46,741.51 | |
| Less: Credit erroneously allowed by referee | 6,070.00– | |
| | $ 40,671.51 | $ 40,671.51 |
| Deficit or loss – 1946 Alton operation | | $ 3,285.49– |
| One-half of deficit (due Thompson from Krohn) | $ 1,642.75 | |
| Less: Berries taken over by Thompson in 1950 in reduction of the 1946 "debt" | $ 1,040.00– | |
| | $ 602.75 | |
| One-half of $1,900 retained by Krohn | 950.00 | |
| Amount due plaintiffs in accounting | $ 1,552.75 | |
| Plus interest to be computed at 6% from June 19, 1951, to date of judgment | | |
| Amounts due plaintiffs on note: | | |
| Principal | $ 425.00 | |
| Attorney fee | 75.00 | |
| Interest to be computed at 8% compounded annually from due date of note, July 8, 1947, to date of judgment | | |

———◆———

The trial court's judgment and decree should be reversed and the cause should be remanded with directions to reinstate Leda S. Thompson and Marion Thompson Hogan as parties plaintiff, and to enter judgment for plaintiffs in accordance with this opinion, the costs to be taxed equally between the respective parties, plaintiffs and defendants.

It is so ordered.

COIL and HOLMAN, CC., concur.
PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.

On Motion for a Rehearing or to Transfer To Court en Banc.

PER CURIAM.

 We have reconsidered the allowance to plaintiffs of interest to be computed at six per cent from June 19, 1951, to date of judgment on the amount due plaintiffs in accounting, $1,552.75; and now, in the exercise of discretion, modify the opinion so that no interest is allowed plaintiffs on that item in accounting until and after the entry of judgment.