Rachel LOCKHART, Plaintiff-Respondent,

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation, Defendant-Appellant.

No. 46490.

Supreme Court of Missouri,

Division No. 1.

Dec. 8, 1958.

Lester F. Stephens, St. Louis, for appellant.

Herman Katcher and Byron A. Roche, St. Louis, for respondent.

HOLMAN, Commissioner.

In this personal injury action plaintiff, Rachel Lockhart, obtained a judgment for $10,000 against the defendant, St. Louis Public Service Company. Defendant has appealed. We have appellate jurisdiction because the amount in dispute exceeds the sum of $7,500. Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

Plaintiff testified that on the morning of February 3, 1956, she was a passenger on one of defendant's eastbound Manchester Line motorbuses and that she intended to leave the bus at Fourteenth and Market. When the bus reached that point it pulled in to the curb behind another bus and stopped at an angle so that the rear exit door was about nine feet from the curb. Plaintiff stated that in getting off the bus (at the rear door) she received the injuries for which she seeks recovery herein. Note her testimony as follows:

"Q. Now, will you describe the condition of the surface of Market Street in that 9 feet between where you were and the south curb of Market? A. Well, there was ice around and some snow piles, however, the sidewalk and the curb was clear.

"Q. And when this bus stopped did you make any effort to get off the bus? A. When the bus came to a complete stop I stepped out and as I got one foot down the bus started up.

"Q. Now, will you explain what happened to you when the bus started up? A. When the bus started up which caused me to lose my balance I started to go frontward and I threw my hands to adjust myself to stay on my feet and I went backward.

"Q. Did any portion of the bus strike you at that time? A. No.

"Q. Now, did you have any sensation of pain at that time, Mrs. Lockhart? A. Yes, back in here I did.

"Q. Now, you are indicating your back to your left side? A. Yes, and under around here, and I didn't feel the same, I didn't feel like myself."

As indicated, plaintiff did not fall to the ground and no portion of the bus struck her. It appears to be her theory that her back was injured in her efforts to regain her balance and to keep from falling. She

stayed at work all of that day but felt "all shook up." That night she applied liniment and used a heating pad. The next two days (Saturday and Sunday) she followed the same treatment and just "lounged around." Sunday night she got sick and had pain "all over." Monday morning she was treated by a physician and went back to work three days later. Plaintiff was employed by the DeLuxe Dress Company as a presser. She worked half time for two weeks and then resumed her regular schedule.

On April 9, 1956, plaintiff went to the Garment Industry Medical Center where she was examined by Dr. Schechter. At that time she had various complaints including "pain in the back with radiation into the left leg." Dr. Schechter gave her medication for pain, ordered X rays, and referred her to Dr. Horwitz, an orthopedist. At the trial, Dr. Schechter and Dr. Horwitz both expressed the opinion that plaintiff had a herniated disc between L-4 and L-5.

In Instruction P-2, the liability of defendant was predicated upon a finding that it was guilty of negligence in that "the place provided for plaintiff to alight was not reasonably safe in that there was an accumulation of ice and snow at said place and if you further find that while plaintiff was in the act of alighting from said bus the defendant caused or permitted said bus to move * * *." Upon this appeal defendant contends that the court erred (1) in admitting into evidence Exhibit A (plaintiff's record at the Garment Industry Medical Center), and (2) in giving instructions numbered P-1, P-2 and P-4.

█ The record of plaintiff's examination and treatment at the Medical Center was brought into court by Mildred Owens who stated that she was assistant receptionist and in charge of files at the Medical Center. She testified that the instant records and X-ray films were "made and kept during the general course of the business of the Medical Center" and were kept

under her control "as a part of the general business of the Medical Center." The exhibits were admitted over the defendant's objection that they were hearsay. Plaintiff read portions of the record to the jury and thereafter defendant's counsel read portions thereof which plaintiff had failed to read.

█ Our "Uniform Business Records as Evidence Law" provides that "A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event * * *." Section 490.680 RSMo 1949, V.A.M.S. It is now settled that said section applies to and affects the admissibility of hospital and medical records. Melton v. St. Louis Public Service Co., 363 Mo. 474, 251 S.W. 2d 663. In regard to such a record, we have held that unless there is proof (in compliance with the foregoing statute) as to "the mode of its preparation" and that it was made "at or near the time of the act, condition or event," it is not shown to be a business entry and hence is hearsay and inadmissible. Gray v. St. Louis-San Francisco Ry. Co., 363 Mo. 864, 254 S.W.2d 577. It is obvious that plaintiff failed to make the required proof as to the records in question and it therefore follows that they were inadmissible.

█ Plaintiff, however, says that any error in the admission of the Medical Center records would not require a reversal because (1) "the facts thereby sought to be shown were otherwise fully and properly established" and (2) defendant "waived its objection later in the trial by using this same exhibit for its own purposes in making its defense." We do not agree.

It is true that both Dr. Schechter and Dr. Horwitz testified in detail as to their examination, treatment and conclusions relating to plaintiff. That testimony covered

many of the facts shown on the Medical Center records her counsel read to the jury. However, we are particularly impressed by the fact that Dr. Schechter indicated in his testimony that he had little, if any, independent recollection of the matter and relied upon notes which he had copied from the Medical Center records. That disclosure would certainly afford a basis for the jury to give more weight to that part of the records than it might otherwise do. Also, we note that included in the records read by plaintiff's counsel is an X-ray report which disclosed findings by Dr. Cherre of a decrease in the intervertebral space between L-4 and L-5. Dr. Cherre did not testify at the trial, and hence said report is the only proof of his opinion as to what the X rays revealed.

■ As we have indicated, plaintiff offered, and the court admitted, all of the Medical Center records relating to the examination and treatment of plaintiff. Her counsel, however, read only certain portions of the record to the jury. Defendant, as a part of its case, read other portions of the record. In so doing, plaintiff contends defendant waived the objection it had previously made to the admission of the exhibit. As stated, we do not agree. Defendant had objected to the admission of the records and the objection should have been sustained. The objection, however, was overruled and plaintiff's counsel then read to the jury only such portions of the exhibit which he deemed to be most favorable to plaintiff. In that situation defendant's counsel could read other portions of the exhibit without waiving his prior objection. Accomac Realty Co. v. City of St. Louis, 347 Mo. 1224, 152 S.W.2d 100. The cases cited by plaintiff in support of this contention (Dorn v. St. Louis Public Service Co., Mo.App., 250 S.W.2d 859, and Dell-Woods Tires v. Riss & Co., Mo.App., 198 S.W.2d 347) involve different factual situations and hence are not persuasive in our determination of the question.

■■ Since we have indicated that the judgment herein must be reversed and the cause remanded, it is unnecessary to rule on the contentions of error relating to the instructions, as plaintiff's counsel, prior to another trial, will have an opportunity to re-examine them and make such corrections as he may deem necessary in view of the attacks made thereon. We note, however, this paragraph of Instruction P-2: "You are further instructed that when the operator of a common carrier stops a bus and opens the door thereof that said common carrier is assuring the passengers thereon that they can alight from said bus in safety." While statements of that general import have appeared in opinions (generally in connection with the defense of contributory negligence) of the courts of this state (see Caley v. Kansas City, Missouri & Kansas City Public Service Co., 226 Mo.App. 934, 48 S.W.2d 25; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295; Feldotto v. St. Louis Public Service Co., Mo.App., 285 S.W.2d 30), that abstract statement is erroneous when used in an instruction. This, for the reason that it makes the carrier an insurer of the safety of the passengers in alighting from the bus when the carrier is only required to use the highest degree of care in selecting a reasonably safe place for that purpose.

The judgment is reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.