James A. NOVAK, Respondent,

v.

George E. BAUMANN, Appellant.

No. 47390.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1959.

Everett E. Teel, Nevada, Mo., Charles D. Tudor, Joplin, for appellant.

Boyd Ewing, Lynn M. Ewing, Bartley J. Readey, Ewing, Ewing, Ewing, Carter & Wight, Nevada, Mo., for respondent.

BARRETT, Commissioner.

This is an action by a bookkeeper-accountant to recover the reasonable value of "additional or special accounting and related services" rendered the defendant. The defendant claimed that any work the plaintiff had done was a part of his regular monthly employment for which he was paid in full. In addition, the defendant asserted that the plaintiff's bookkeeping and tax work were worthless, so inaccurately and carelessly done that he was obliged to employ a competent accountant to correct the plaintiff's work, and therefore he filed a counterclaim in which he asked to recover all sums paid the plaintiff and the accountant. By consent of the parties the case was referred to a referee who found against the defendant on his counterclaim and for the plaintiff on his cause of action. Upon exceptions the circuit court approved the report of the referee and entered judgment against the defendant for the total sum of $12,407.87 which includes interest on the principal sums and costs.

 At the outset, upon this the defendant's appeal, plaintiff's counsel emphatically assert that the referee's report "stands as a verdict of a jury"; it is said that there was substantial evidence to support the findings and therefore the judgment should not be disturbed on appeal. Counsel also assert that "in an equity case" this court must accord deference to the findings of the referee because he heard the witnesses, observed their demeanor, and in this case obviously believed the plaintiff rather than the defendant. The cases upon which counsel rely (Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262; Houchin v. Ward Stores, Mo.App., 167 S.W.2d 650; Craig v. McNichols Furniture Co., Mo.App., 187 S.W. 793, and Gimbel v. Pignero, 62 Mo. 240) were decided without regard to or prior to the adoption of the Civil Code of Procedure and, inferentially if not directly, have been overruled by Baerveldt & Honig Construction Co. v. Dye Candy Co., 357 Mo.

1072, 212 S.W.2d 65; Oliver L. Taetz, Inc. v. Groff, 363 Mo. 825, 253 S.W.2d 824, and Hogan v. Krohn, Mo., 318 S.W.2d 163. As these latter cases specifically decided, the review of referred cases (V.A.M.S., Secs. 515.010–515.230) is governed by V.A.M.S., Sec. 510.310, subd. 4 of the civil code and is anew in this court. And in this action in assumpsit, founded on the principle of restitution for unjust enrichment, it is the duty of this court to "review the case upon both the law and the evidence" and to give such judgment as the trial court "ought to have given." V.A.M.S., Secs. 510.310, subd. 4, 512.160; Minor v. Lillard, Mo., 289 S.W.2d 1; Beckemeier v. Baessler, Mo., 270 S.W.2d 782.

The defendant, Baumann, was a general contractor with an office and residence in Nevada. The plaintiff, James A. Novak, age 32, operated a bookkeeping and accounting service in Nevada. In September 1949 Baumann became one of Novak's clients; from weekly "paid out sheets" and other information supplied by Baumann's office girls Novak compiled monthly balance sheets, kept a ledger and for the years 1949–1954 prepared Baumann's income tax returns. For these services over the years Baumann paid Novak the previously agreed upon sums of $50 to $85 a month and this suit does not involve these services or these payments. As stated, this claim is for additional "special accounting" services, extra bookkeeping work and related services rendered at the special instance and request of the defendant. In fact the claim concerns additional services performed in connection with two matters; one, an audit by the government of Baumann's income tax returns for the years 1949 to 1952, and, second, the Baumann-Speer Construction Company of Wichita, Kansas, and its bankruptcy. In the briefs of the parties considerable time and space are devoted to whether Novak's services in connection with the income tax investigation eventually resulted in a handsome refund to Baumann. The referee found against Baumann on his counterclaim

and we defer to that finding, hence there is no point to considering whether Novak's additional services resulted in a refund or whether his regular services were worthless. The relevant and voluminous correspondence has been examined and it may only be said that any end gain or refund in Baumann's income tax was not due either to the diligence and competence of the plaintiff or to the sagacity of the defendant but resulted entirely from a fortuitous concatenation of circumstances over which neither had the slightest control. The first problem here is whether Novak in fact performed additional services in circumstances that Baumann is obliged to pay for them and the second and essentially meritorious question is the cogency and compelling force of Novak's proof as to the precise number of additional hours he devoted to these extra services.

■ As an additional enterprise Baumann entered into the construction business with Speer in Kansas, the venture was unsuccessful and Speer Construction Company went into bankruptcy. At Baumann's request Novak made several trips, investigated and settled a large number of claims against the Speer Company, he examined the company books in detail and Mr. Baumann conceded his knowledge of the fact that these tasks entailed extra or additional detailed work and time and he admittedly knew that Novak expected extra pay for this particular extra work. When, in 1953, the revenue agents started an investigation of his income tax returns for the years 1949 to 1952 and claimed that he owed large additional sums in taxes Mr. Baumann admittedly asked Novak to work with the agents, although he claims that he did not know that extra pay was expected for this service. The tax investigation dragged along for approximately three years and Novak spent a lot of time corresponding with the agents, checking their various claims and making detailed investigations and reports of Baumann's books and rec-

ords. At times Novak reported to Baumann on the status of the investigation and Baumann often referred the agents' letters and proposals directed to him to Novak and of necessity he knew that Novak was doing the work and he of course knew that some of the work entailed the expenditure of time in addition to the time required for the regular book and tax work. There is considerable duplication in Novak's proof; for example, exhibits 10 to 79 are letters and reports to and from different revenue agents, most of them directly to and from Novak, some to Baumann, and some to and from plaintiff's counsel who then represented Baumann and each of these items was introduced as a single exhibit. Subsequently, to illustrate, exhibits 83 to 89 were offered in evidence, these were folders and packages of work sheets, reports and letters relating to the tax problem and some of the reports and letters offered as exhibits 10 to 79 are contained in and were obviously taken from these folders. Nevertheless these and other exhibits show that Novak with Baumann's knowledge, if not explicit request, did extra or additional special work on both the Speer and the income tax matters in the expectation that he would be compensated for his services. In these circumstances the referee appropriately imposed upon Baumann the obligation to pay Novak the reasonable value of his services. Laughlin v. Boatmen's National Bank, 354 Mo. 467, 189 S.W.2d 974; In re Hukreda's Estate, Mo., 172 S.W.2d 824.

■ According to the plaintiff his Speer work began in February 1953 but he was paid $398.60 for work done in the months of February, March and April, and $75 for work in May. The income tax investigation and the plaintiff's extra work on it started June 1, 1952. Novak and Baumann severed all business connections on June 25, 1955, consequently all of the plaintiff's additional or extra work was done over the space of three years. It must be remembered that during all this period of time the plaintiff had several other regular clients,

sixty-five at one time, and so he claims that the greater part of his extra work for Baumann was done at nights, Sundays and on holidays. He claimed and the referee found that he had expended 1,014½ hours on the Speer matter and 1,816 hours on the tax investigation, a total of 2,830½ hours, 133 hours for typing service at $1.35 an hour and 2,697½ hours accounting and bookkeeping at $4 an hour. Novak testified that he spent 881½ hours on the Speer matter, 453½ of these hours were spent on Sundays, nights and holidays. In the tax investigation which, of course, was in progress at the same time as the Speer matter, he expended 1,816 hours, 987 hours at nights, Sundays and holidays. Accepting his minimum computation of 881½ hours' labor on the Speer matter and 1,816 hours' labor on the tax work and assuming an eight-hour workday these total hours represent more than 337 days, almost an entire year's work, in addition to his three years of regular work. The total hours of Sunday, night and holiday work, 1,440½ hours, represent 180 eight-hour workdays.

The plaintiff, of course, had no independent recollection of his hours of additional work and he attempts to prove the precise number of hours by what he calls his "time records," exhibit 9. There are three parts to this exhibit, the first part consists of fifteen scraps and bits of paper on which he has listed the clients, the month, days and hours spent on that date for each client, many of these entries are indecipherable to anyone except the plaintiff. Sixteen sheets of the exhibit are on a form intended to be a worktime record but instead of following the form the plaintiff has again listed his clients and purportedly recorded the hours devoted to each client's business, many of these entries are meaningless to anyone other than their maker. The third part of the exhibit, listing clients and hours devoted to their business, is a small, vest-pocket size "executive's data book" and the entries begin January 1, 1955, and abruptly end May 10, 1955. Sometimes the plaintiff's wife, his brother and others did "some of that work in the office" but no record was kept of the hours they worked and so this exhibit purports to account for the hours the plaintiff personally devoted to his clients.

Notched sticks and shingles as well as scraps and slips of paper have been accepted as original account books and time records for laborers and others (annotation 17 A.L.R.2d 235, 243) but these time records purport to have been kept by an expert bookkeeper. On the fifteen miscellaneous scraps of paper there is no indication of the year in which they were used and no way to identify the year except for the plaintiff's testimonial identification. On these bits of paper, as far as Baumann is concerned, these are typical entries: "Nov 10 Baumann 4," "Nov 24 Speer 5" or "20 Speer 12," "23 Speer 10." On one of the larger sheets, the last one to illustrate, an entry in one column shows Baumann "18" and Speer "20," all on the same date and in addition to 14 hours attributed to other clients. These records do not show that the hours were spent at night or that they were overtime, and they do not pretend to indicate the nature of the work in which the plaintiff was engaged. This is not to say that this exhibit is worthless or entirely lacking in probative force, however, the itemization is indeed comparable to that found to be insufficient and rejected in its entirety in Beckemeier v. Baessler, supra. In computing the hours devoted to the tax matter Novak started with 576 hours for which he had no records, those hours were "accumulated monthly," he says, from slips of paper which he threw away as he accumulated the hours. There is no objection to entries transferred from reliable memoranda (Mueller v. Rock, Mo.App., 249 S.W. 435; annotation 17 A.L.R.2d loc. cit. 246), and while there may be some corroboration of his time spent in the correspondence of the income tax agents (Weinshenk v. Sullivan, Mo.App., 100 S.W.2d 66, 70), "it

**736**

is to us inconceivable that a statement of account could have been prepared from the daybook with any respectable pretense of accuracy." Beckemeier v. Baessler, 270 S. W.2d loc. cit. 786; Sonnenfeld v. Rosenthal, 247 Mo. 238, 152 S.W. 321; Lockhart v. St. Louis Public Service Co., Mo., 318 S.W.2d 177. Compare the records, their keeping and identification in Hancock v. Crouch, Mo.App., 267 S.W.2d 36, and Reutner, Klaus & Co. v. Nelson Chesman & Co., Mo.App., 9 S.W.2d 655.

It is not necessary to further analyze in detail the proof as to the number of hours the plaintiff may have expended (the court has attempted numerous computations), and it is not necessary to characterize the testimony of the parties, no deference is involved in interpreting the written records in this case. It is obviously not possible for this court or anyone else to determine with mathematical precision just how many extra hours the plaintiff worked for the defendant and hence just how much money the defendant reasonably and fairly owes the plaintiff at $4 an hour. Plainly, the 576 "accumulated" hours should not have been allowed, and this court reviewing the record anew finds that there is no compelling, substantial proof of an additional 674 hours, making a total of 1,250 hours or $5,000. Therefore the judgment is reversed and the cause remanded with directions to the circuit court to accordingly compute the principal sum due, add the interest and enter judgment against the defendant.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.