John **TALLANT** et al., d/b/a Tallant and Company, Plaintiffs-Respondents,

v.

**W. A. HAMILTON** et al., Defendants-Appellants.

No. 51674.

Supreme Court of Missouri, Division No. 2.

Sept. 12, 1966.

Rehearing Denied Oct. 10, 1966.

Daniel, Raskas & Ruthmeyer, H. Jackson Daniel, St. Louis, for plaintiffs-respondents.

Northern & Crow, Rolla, for defendants-appellants.

DONNELLY, Judge.

This suit for an accounting was instituted in the Circuit Court of Pulaski County, Missouri, by John Tallant and his four sons,

Lewis, Charles, Leasle and Billie, against defendants, W. A. Hamilton and his two sons, Doyle and Glenn. An accounting was agreed to by the parties and by their consent was referred to a referee who found plaintiffs entitled to receive from defendants the sum of $21,258.91. Upon exceptions the circuit court approved the report of the referee and entered judgment for plaintiffs and against defendants for $21,258.91. Defendants perfected their appeal to this Court.

We will refer to plaintiffs as the "Tallants" and to defendants as the "Hamiltons." The Tallants were co-partners during the period 1952 to 1960, engaged in the business of buying and selling new and used automobiles, trucks, trailers and tractors. The Hamiltons were, during said period of time, engaged in the business of financing the sales and purchases of new and used automobiles, trucks, trailers and tractors. During this period the Tallants bought and sold new and used automobiles, trucks, trailers and tractors, and a majority of such sales were made on an installment plan, whereby the purchasers delivered to the Tallants, as part of the purchase price, their promissory notes secured by separate chattel mortgages on the vehicles sold. As the Tallants sold motor vehicles and received promissory notes, secured by chattel mortgages, they sold or discounted to the Hamiltons the promissory notes and chattel mortgages of their customers and guaranteed payment.

In addition to the notes of the Tallants' customers, which were sold or discounted to the Hamiltons, the Tallants borrowed money from the Hamiltons in order to acquire vehicles for sale purposes and executed their promissory notes, secured by chattel mortgages on such vehicles, to cover such loans. They paid off such obligations at the time the vehicles in question were sold. This practice of borrowing money on vehicles purchased by the Tallants for resale was known as "floor planning."

In addition to the percentage of discount at which promissory notes and chattel mortgages were sold and discounted to them, the Hamiltons retained a sum of money as a reserve against credit losses that might, from time to time, be suffered as the result of any defaults in the payment of the promissory notes and chattel mortgages by the individual makers thereof and as a reserve against losses resulting from repossession of vehicles. This reserve was known as the "dealer's reserve."

This business arrangement between the parties continued for several years. On or about September 4, 1959, the Tallants ceased to do business with the Hamiltons and after that date they sold or discounted no more "paper" to the Hamiltons. On or about September 9, 1959, the Hamiltons initiated replevin actions whereby they obtained possession of the 14 vehicles upon which they then held chattel mortgages under the "floor plan." Between the months of September, 1959, and June, 1960, the Hamiltons repossessed 33 vehicles under chattel mortgages securing promissory notes of the Tallants' customers, which notes had been sold or discounted by the Tallants to the Hamiltons. All of these vehicles were sold by the Hamiltons during the period between November, 1959, and August, 1960. It is agreed and stipulated by the parties that the "dealer's reserve" now held by the Hamiltons amounts to $29,275.06.

■ It is our duty to review the case upon both the law and the evidence as in actions of an equitable nature. Novak v. Baumann, Mo.Sup., 329 S.W.2d 732; Hogan v. Krohn, Mo.Sup., 318 S.W.2d 163; Baerveldt & Honig Const. Co. v. Dye Candy Co., 357 Mo. 1072, 212 S.W.2d 65. We review the action de novo on the record and we must make our own findings of fact, draw our own conclusions of law, and enter or direct the entry of the judgment thus indicated, giving due deference to the referee on matters of conflicting evidence. Watkins v. Watkins, Mo.Sup., 397 S.W.2d 603, 609.

The referee found, and we hold, that the Hamiltons are entitled to retain from the "dealer's reserve" the difference between the amount the Tallants owed them on the notes and the value of the vehicles repossessed, less the cost of repossession. The basic dispute between the parties involves a determination of the value of the vehicles repossessed. The Hamiltons contend that the value of the vehicles repossessed was the total amount received by them from sales after repossession, and that, under Universal C. I. T. Credit Corp. v. Byers, Mo.App., 299 S.W.2d 559, 562, the Tallants did not sustain the burden of proof to show that the Hamiltons "failed to act in good faith and did not use every reasonable means to obtain the full value of the mortgaged property." The referee found that the agreement of the parties, as to the "dealer's reserve," was that the value of the repossessed vehicles should be determined as of the time of repossession and, in effect, that the Byers case, supra, does not rule the question. We agree.

There was evidence adduced as to "average retail market value" of the types of vehicles involved as stated in the Red Book, National Market Reports, Incorporated, for the period of September, 1959. The referee accepted such evidence as to value of each repossessed vehicle. Such evidence, when proper foundation is laid, is admissible. Baker v. Atkins, Mo.App., 258 S.W.2d 16, 20, 21, and cases cited therein. However, this evidence did not take into consideration the mechanical condition of a great number of the vehicles when the Hamiltons took possession. We have reviewed the entire record and make our own findings of fact.

There were 14 "floor plan" vehicles repossessed by the Hamiltons. The total principal amount due on the notes covering such vehicles was $6,363.00, plus interest in the amount of $736.61, making a total amount due of $7,099.61. The total expenses of repossessions were $160.24.

Therefore, the Hamiltons were entitled to receive on such "floor plan" vehicles the sum of $7,259.85. We find that the Hamiltons received vehicles of a value of $6,395.-00. Subtracting the amount of the value of such vehicles from the total amount due under the notes, including the expenses of repossessions, we find that the Hamiltons are entitled to $864.85 from the "dealer's reserve" for "floor plan" vehicles.

There were 33 vehicles repossessed by the Hamiltons under the "customer contracts." The total amount due on the notes covering such vehicles was $41,091.42. The total amount of expenses for such repossessions was $2,136.03. Therefore, the Hamiltons were entitled to receive on such "customer contract" vehicles the sum of $43,227.45. The Hamiltons received $998.66 on such notes *after* the vehicles in question were repossessed. We also find that the Hamiltons received vehicles on repossession of a value of $25,535.64. Therefore, the Hamiltons received property, money and vehicles, of a total amount of $26,534.30. It is our finding that the Hamiltons are entitled to $16,-693.15 from the "dealer's reserve" for "customer contract" vehicles.

There were 16 customer accounts where the balance due is unpaid and there were no repossessions because the whereabouts of customers and vehicles are unknown to the parties. The total amount due on such notes is $7,151.30. It is our finding that the Hamiltons are entitled to $7,151.30 from the "dealer's reserve" on these vehicles.

Based on the evidence, it is our conclusion that of the total amount of $29,275.06 in "dealer's reserve" the Hamiltons are entitled to $24,709.30, and the Tallants are entitled to $4,565.76.

The judgment is reversed and the cause remanded with directions that judgment be entered for plaintiffs in the amount of $4,565.76, costs to be taxed equally between the parties.

All concur.